(

---

### TULEY et al. v. READY et al.

EXECUTION SALES—*Title of purchaser.*—The purchaser, at a sheriff's sale, can not acquire any greater interest than the judgment debtor possessed at the rendition of the judgment, and where the title or interest so acquired comes in litigation, it devolves upon the purchaser to show what the title or interest of the execution debtor was.

PURCHASER WITHOUT NOTICE—*Defense of, what plea or answer must show.*—The answer or plea of a party claiming to be an innocent purchaser, must state *first*, the deed of purchase, the date, parties and contents; *second*, that the vendor was seized in fee and in possession, and *third*, a *bona fide* payment of the purchase money and want of notice down to the payment of the purchase money and the execution of the deed.

APPEAL FROM JEFFERSON CIRCUIT COURT.

HON. HENRY B. MORSE, *Circuit Judge.*

*Garland & Nash*, for Appellants.

McCLURE, C. J.—On the second of April, 1860, Milton B. Tuley sold and conveyed to one William D. Baird certain lands in Jefferson county. At the time of the sale, Baird paid four thousand dollars, and executed his two writings obligatory in the sum of twenty-five hundred and ninety-six dollars

each, payable on the 2d of April, 1861 and 1862, respectively. The deed of conveyance is in the usual form, save that it contains the following condition: "But it is nevertheless expressly understood and agreed by the parties, that the said two notes for the two thousand five hundred and ninety-six dollars and thirty cents each, shall be and remain a lien upon said land and premises until 'the same shall be fully paid off, with all interest that may accrue threon; then this deed is to vest an absolute title in the said party of the second part, his heirs and assigns forever." On the 16th of August, 1866, M. B. Tuley assigned the two notes, alluded to, to Enos S. and Albert L. Tuley.

On the 21st of February, 1868, Enos S. and Albert L. Tuley filed their bill, in the Circuit Court of Jefferson county, against Charles W. Ready, as administrator of William D. Baird deceased, Catherine Valentine, Philo G. Valentine, William Baird, Charles E. Baird, Violet Baird, Amanda Baird and William P. Grace.

The object of the bill, as to all the defendants, except Grace, was to enforce a vendor's lien.

In December of 1865, Grace obtained a judgment 'against William B. Tuley, in the sum of $690 65. Execution issued and levy was made upon the lands sold and conveyed to William D. Baird, by Milton B. Tuley, as the property of said Milton. The property, so levied upon, was advertised and sold to Grace for $100.

The bill recites the above facts, and alleges that the pretended title of Grace throws a cloud around the rights of the appellants, and greatly diminishes the value of said lands, if the same should be ordered to be sold to satisfy their said lien. The prayer as to Grace is, that his title, thus acquired, may be cancelled and held for naught. The prayer as to others is, that they may be made parties defendants, and that the appellants may have a decree for the sale of the lands.

Ready, the administrator of Baird, made no response, nor did either of the Valentines. Grace filed an answer and cross

bill, making Enos S. Tuley, Albert L. Tuley, Charles M. Ready, administrator of William D. Baird, deceased, Catharine Valentine, Phillip Valentine, William Baird, Violet Baird, Charles E. Baird, and Amanda Baird, parties defendants. The cross bill sets up a judgment, execution and sale of the property, described in the deed of Milton B. Tuley to William D. Baird, to himself. It admits that, on the day of his purchase, Owen, acting as the agent of Enos S. and Albert L. Tuley, notified him of the sale of the property by Milton B. Tuley, to Baird, and of the lien reserved in favor of the unpaid notes for the purchase money, then in Owens' hands, as the agent of the Tuleys; but he charges that the assignment of the notes, to the Tuleys, was made without consideration, and for the purpose of defrauding the creditors of said William B. Tuley, one of whom was Grace; that Milton B. Tuley and William D. Baird are both deceased; that the heirs at law of Baird, as well as the said Ready, administrator of Baird, have abandoned the right to perfect the title to said lands, and do not pretend to have any interest in the same. The relief asked in the cross bill is, that he, Grace, upon final hearing, may have a decree fully confirming and establishing his title to said lands as against the claims and demands of the complainants, in the original bill, and also against any claim or demand which the heirs at law, or the estate of the said William D. Baird may pretend to have in or to said lands, and that they and each of them may be perpetually restrained and enjoined from ever proceeding to set up or establish any claim or title to said lands, by reason of either the sale and purchase mentioned in said bill, or the assignment and transfer of said lands by the said William B. to the said complainants.

Enos S. and Albert L. Tuley filed an answer to the cross bill of Grace—a *guardian ad litem* was appointed for the infant heirs of Baird, who answered that he knew nothing of the facts set up in the bill, cross bill or answer of the parties, and asked the protection of the court.

At the final hearing, a decree, *pro confesso*, was taken as to Ready, the administrator of Baird, Philo G. Valentine, and Catharine Valentine. It was further decreed that Enos S. and Albert L. Tuley were not entitled to any relief whatever, and that the said William B. Tuley, at the time of the assignment and transfer of said notes, mentioned in said bill, executed said assignment in fraud of the rights of said Grace, and in order to defeat the collection of the judgment of the said Grace; that there was no consideration for said assignment, and that said bill be dismissed with costs. It was further decreed that Enos S., and Albert L. Tuley, as well as the other defendants to said cross-bill, be and the same are hereby enjoined from setting up any claim to a lien on said lands by reason of the premises set up in said original bill; whereupon the complainants appealed to this court.

The deed of Milton B. Tuley, to William D. Baird, was not recorded at the time of the sale. The purchaser at a sheriff's sale cannot acquire any greater interest than the judgment debtor possessed at the rendition of the judgment. This being true, a very pertinent inquiry arises, and it is : What interest did William B. Tuley have in the land by him deeded to Baird ? The facts are that Milton B. Tuley, in April of 1860, sold and deeded the land to Baird, in consideration of $9,192 60, four thousand dollars of which was paid at the time of the purchase. But Grace claims that he had *no notice of this sale*, because the deed from Tuley to Baird was not *placed of record*, and insists that, because of this, he is a purchaser without notice. If it be true that Grace is a purchaser without notice, he is entitled to protection, and not otherwise. Now let us examine the facts, as to whether he was an innocent purchaser. W. F. Owen testifies that, "on the day of sale, he, acting for the complainants, gave notice that Milton B. Tuley had sold the land, about to be offered for sale, to Baird, and had made him a deed." To whom this notice of claim was given, or in whose presence it was made, does not appear; but it does appear, from Grace's answer, that

Owen, one of the attorneys of the complainants, gave notice that the "complainants claimed a lien on said lands for the balance of the purchase money," on the day and at the time the sheriff put up and offered said lands for sale.

This admission, of itself, might be strong enough to amount to notice of the sale of the lands to Baird by Tuley. Upon this point, however, we shall not express an opinion, as the testimony of Grace, himself, evinces a knowledge of the sale, obtained from Milton B. Tuley. Grace testified, "that after the recovery of the judgment against Milton B. Tuley, and before the assignment of the note to Enos S., and Albert L. Tuley, he had a conversation with Milton B. Tuley, and said Milton told him that *he had back the land*," (referring to the land mentioned in the deed from Tuley to Baird.) This conversation was had before the sale. From the facts and circumstances recited, it becomes apparent that Grace must have known of the sale from Tuley to Baird. If Tuley *"had the land back,"* it is for Grace to show that fact, or he takes nothing by the purchase at the sheriff's sale. There is a demurrer clause in the answer of the Tuleys to the cross bill of Grace, alleging that said cross bill does not, on its face, show or disclose a case for relief, either at law or in equity.

This court held in *Byers vs. Fowler*, 12 *Ark.*, 218; and in *Cook vs. Bronaugh*, 13 *Ark.*, 192, that "the answer of a party claiming to be an innocent purchaser, must state:

*First* The deed of purchase, the date, parties and contents.

And *Second*, That the vendor was seized in fee and in possession.

And *Third*, A *bona fide* payment of the purchase money, and want of notice down to the payment of the money and the execution of the deed.

In the case at bar, Grace, in his cross bill does not attempt to allege any title whatever in Milton B. Tuley, but, on the contrary, admits in his own testimony and answer, and cross bill, that he knew the title to the property, which was levied on

and sold by the sheriff and purchased by himself, was in Baird and not in Tuley.

Before one can have relief, such as is asked in the cross bill, the party asking it, must show, affirmatively, that his judgment debtor had an interest in the lands sold, and just what that interest was. The cross bill does not even set up any title to the property, in Milton B. Tuley at any time, or that Tuley was ever seized of the fee; nor is there a denial of notice down to the time of payment and the execution of the deed.

Having determined that Grace acquired no title by reason of the sheriff's sale, it is plain that the demurrer to the cross bill ought to have been sustained. The complainants having made him a party defendant to the suit, he had a right to attack the assignment of the notes to the complainants, and show that it was fraudulent, and a fraud upon his rights. If his answer and cross bill had been so framed, the court, after having declared the assignment a fraud, and without consideration, might have ordered the property sold, and the proceeds distributed among the creditors of William B. Tuley, deceased; but the bill was not so framed. The assignment of the notes, whether fraudulent or otherwise, did not confer any title to the lands, in either Grace or Tuley; because the legal title to the land passed to Baird, with the execution and delivery of the deed. The assumption, in the bill, that Tuley made a conditional sale, is erroneous, as it is clear from the face of the deed, that the condition annexed to it was not for the purpose of *retaining title*, but for the purpose of protecting and securing the balance of the purchase money. The legal title to the property, as we have said, is in Baird; at his death, it passed to his heirs, subject to such incumbrances and liens, as he or the law may have fixed to it. We agree, with the court below, that the assignment to the complainants, by Tuley, was fraudulent and without consideration, and for the purpose of defrauding creditors, and the decree of the court, in dismissing the bill of complainants, is affirmed.

Grace, as we have already shown, has no interest or claim to the lands purchased by him, at the sheriff's sale; this being true, it was erroneous to grant him a perpetual injunction against the complainants and the other defendants; for this error, the cause is remanded, with instructions to dismiss the cross bill for the want of equity therein. It may be asked, at this point, what becomes of the notes? The answer is, that they are properly assets of the estate of Tuley, deceased, whose legal representative is entitled to the possession thereof. Grace, and the other creditors of the estate of Tuley, deceased, inasmuch as the assignment to the complainants has been declared fraudulent, are bound to look to the same fund for the payment of their debts and judgments, as though no fraudulent assignment had been made.