Burke v. Johnson.

FRANK BURKE v. J. B. JOHNSON.

LEGAL AND EQUITABLE TITLE; *Property, not Subject to Attachment.* On April 8, 1884, J. purchased from A. certain lands and personal property thereon belonging to A., and paid thereon a part of the purchase-money, and gave his promissory note for the remainder, payable one day after date, and received a contract from A. to convey the legal title to him upon payment of the note for the residue of the purchase-money. On April 9, B. commenced an action in attachment against A., and attached the property as the property of A.; and afterward, on the same day, J. paid the residue of the purchase-money, and re-

ceived a deed of conveyance from A. to the property. At the time of the attachment B. had no notice of the sale by A. to J., and at the time of the payment of the note for the remainder of the purchase-money and the receiving of the deed to the property, J. had no actual notice of the action of B. against A., and of the attachment of the property. *Held*, That J., at the time the property was attached, was the equitable owner thereof, and that the naked legal title was held by A. only as surety for the payment of the residue of the purchase-money due thereon, and that the property was not subject to attachment by B. as the property of A.; and that the fact that B. had no notice of the purchase by J. could make no difference. And *further held*, That the payment by J. of the remainder of the purchase-money, and the receipt of a deed of conveyance of the property from A., without actual notice of the attachment, and his acting in good faith in the entire transaction, gave him the legal as well as the equitable title to the property.

*Error from Johnson District Court.*

ACTION brought by *Frank Burke* against *T. E. Armstrong.* An order of attachment was issued therein, and the property in controversy attached as the property of Armstrong. *J. B. Johnson*, the defendant in error, interpleaded, claiming the property attached. Armstrong made default, and judgment was rendered against him and in favor of the plaintiff for $5,200. The cause on the interplea was submitted to the court, a jury being waived. Findings of fact and conclusions of law were made, as follows:

"FINDINGS OF FACT.

"1. On the first day of April, 1884, the said T. E. Armstrong was the owner in fee of the lands and tenements in controversy, as well as the owner of the goods, chattels, stock and personalty, in controversy; and on said day he gave written power and authority to one S. F. Coons to make a sale of said real and personal property, all and singular.

"2. On the 8th day of April, 1884, said S. F. Coons, as 'Frank Coons,' executed and delivered to the said J. B. Johnson the following written contract of sale and to convey, all and singular, the said real and personal property, to wit:

"'SPRING HILL, KANSAS, April 8, 1884.— Mr. J. B. Johnson has this day paid me the sum of eighteen hundred dollars — forty dollars in cash to Mr. Armstrong in person, and his note due to Mr. Armstrong for seventeen hundred and sixty dollars, due one day after date — in full of purchase-price of the farm, now owned by T. E. Armstrong, of 113

acres, in Spring Hill township, Johnson county, Kansas, called the 'Frank Burke' farm. Also, for all the stock and farming implements now on the farm, consisting of 28 hogs, with a lot of sucking pigs; 7 cows and heifers, and 1 bull; 1 four-year-old mare colt, and 1 four-year-old horse colt; a lot of chickens and turkeys; a lot of corn in crib and some in the field; a lot of oats in crib and in stack; 2 farm wagons and some old harness; a combined mower and reaper; 1 corn planter; 1 iron harrow; 1 riding cultivator; 1 walking cultivator; 3 walking plows, and other agricultural implements. Mr. Johnson to take possession of the farm and stock, etc., forthwith, and he is to have a deed to the land (as soon as I can get it) from Mr. Armstrong, of Kansas City, Mo. Johnson is to pay the mortgages now against the land.

(Signed)         T. E. Armstrong.
By Frank Coons, <em>Agent.</em>'

"3<em>a</em>. The said 'Burke farm' or lands and tenements which by written authority, executed by said Armstrong to said Coons on April 1, 1884, was authorized to sell, and which were intended to be and were sold, to said Johnson by the said Coons, in virtue of the written contract of April 8, 1884, consists of and are as follows, to wit: The southeast quarter of the northwest quarter, and the southwest quarter of the northeast quarter, and the southwest quarter of the southeast quarter of the northeast quarter of section number fifteen, in township number fifteen, of range number twenty-three, in Johnson county, state of Kansas; also, outside lots Nos. 35, 36, 37, 38 and 39, and all that part of lot number forty lying south of the north line of the said 'Frank Burke' farm, in the town or city of Spring Hill, Johnson county, state of Kansas.

"3<em>b</em>. Pursuant to said contract of sale and to convey, the said J. B. Johnson took possession of said premises, and has been in actual possession thereof ever since. On April 10, 1884, said J. B. Johnson took actual possession of all of said real and personal property.

"4. The consideration for such sale and purchase was as follows, to wit: (1) cash $40, then paid by said J. B. Johnson to said Armstrong; (2) a promissory note given by said Johnson for the sum of $1,760, payable to said T. E. Armstrong (only), one day after its date, and dated April 8, 1884 — being the day on which the said $40 cash payment was made; (3) the assumption of payment by said Johnson of a certain mortgage incumbrance, then on and against said lands and tenements, amounting to $1,700, and accrued interest thereon.

"5. On the 8th day of April, 1884, the said Burke instituted a civil suit in this court against the said Armstrong, to recover the sum of $5,200 unliquidated damages; and an order or writ of attachment issued in said action against the real and personal property of said Armstrong, which said writ purports

to have been issued by the clerk of this court, in said action, on the 8th day of April, 1884, and is under the seal of this court, and which said writ of attachment is made returnable in ten days from its date; and the sheriff's return thereon indorsed shows that he received said writ on the 8th day of March, 1884, and that on the 9th day of April, 1884, at two and one-half o'clock A. M., he levied the same upon all the real and personal property in controversy; and on the 11th day of June, 1884, said Burke obtained judgment against said Armstrong in said action upon constructive service, which judgment is now in force and wholly unsatisfied.

"6. At the time of making the said levy there was a man (and his wife) occupying the building or dwelling house upon said premises, with whom the sheriff then left a duly-certified copy of the order or writ of attachment; said occupant's name is Kohn Kuchner.

"7. At the time of the issuance of said writ of attachment, as well as at the time of the levy thereof, the said Burke had no notice, actual or constructive (other than the law may give or imply in such cases), of the said sale and purchase between the said Armstrong and Johnson.

"8. At the time of making said purchase, and receiving said contract of sale and to convey said premises, and the payment of said sum of $40, and giving the note for said sum of $1,760 to said Armstrong by said Johnson, the said Johnson had no notice, actual or constructive, nor any knowledge whatever, that said Burke had any 'claim,' or 'rights,' or equities in, of, or to the property in controversy, realty or personalty, nor any indebtedness of Armstrong to said Burke.

"9. At the time the said Johnson took up said promissory note and paid the $1,760, balance of purchase-money to said Armstrong, and accepted the deeds to said premises, at Paola, Kansas, at about noon on the 9th day of April, 1884, the said Johnson had no actual knowledge or actual notice of any attachment having been levied upon said real and personal property, or either thereof, by said Burke or any other person, and he had no 'constructive notice' thereof other than the law implies from the records of this court, showing that an order of attachment had been issued in said action.

"10. The deeds to and for said real property from said Armstrong and wife to said Johnson, pursuant to said written contract of sale and to convey, were delivered by said Armstrong to said Johnson, at Paola, Kansas, at about noon of

the 9th day of April, 1884, at which time and place the said Johnson paid the said sum of $1,760 to said Armstrong.

"11. Since the delivery of said deeds the said Johnson has paid all interest as it became due on said mortgages, and has paid all taxes lawfully assessed against said real and personal property."

"CONCLUSIONS OF LAW.

"1. By reason of the execution and delivery of the written contract of sale and to convey said realty by said Armstrong, by his agent, Coons, and the payment of the purchase-price by money and promissory note, and assumption of the payment of all mortgages and incumbrances thereon then existing by said Johnson, as well by said Johnson's possession of said premises, the entire equitable title passed to said Johnson, on the said 8th day of April, 1884, in, of, and to said lands and tenements.

"2. The legal title (the naked fee) in, of, and to said realty remained in said Armstrong, in trust for said Johnson from the delivery of said contract of sale and to convey, from April 8, 1884, until the deeds therefor were delivered to said Johnson by said Armstrong and wife, on the 9th day of April, 1884, at Paola, Kansas.

"3. From the time of the delivery of said written contract of sale and conveyance to Johnson, as above stated, the said Armstrong had no leviable interest or estate in, of, or to said property as against the rights of said Johnson.

"4. Said written contract of sale so delivered to said Johnson on the 8th day of April, 1884, passed the ownership of the personal property therein described unto the said Johnson as of that date.

"5. Said Johnson's rights and equities in and to the real and personal property in controversy are superior (and prior in time) to the rights and equities therein and thereto of the said Burke; said Burke's lien, if any he hath, is subsequent in point of time and inferior in point of equity; and Burke having failed to garnish Johnson for the $1,760, balance of purchase-money due (and paid after the hour of the attachment levy), the said Burke has not any lien upon said fund.

"6. The court finds for the interpleader, J. B. Johnson, and against the plaintiff, Frank Burke; and that the said J. B. Johnson is entitled to recover his costs against the said Burke in this behalf expended."

The plaintiff moved for a new trial on the ground that the

conclusions of law are not sustained by the findings of fact. This motion was overruled on December 2, 1885, and judgment rendered for the interpleader, *Johnson.* The plaintiff *Burke* brings the case here.

*I. O. Pickering,* for plaintiff in error; *O. A. Bassett,* and *G. C. Clemens,* of counsel.

*A. Smith Devenney, John T. Little,* and *Samuel T. Seaton,* for defendant in error.

Opinion by CLOGSTON, C.: But one question is presented: that is, are the conclusions of law sustained by the findings of fact? This question must be determined by an examination of the title to the property at the time the attachment was levied; and if Armstrong at that time had a leviable interest in the property, then the judgment should be reversed. The facts as found by the court show that the legal title to the

*Legal and equitable title; lien for purchase-money.* property remained in Armstrong, subject to the interest and rights of Johnson under his contract of purchase. This contract transferred to Johnson the equitable right to the property, subject alone to Armstrong's lien for the remaining unpaid purchase-money. This lien amounted to a security only, and when this purchase-money was paid he could be compelled to convey the legal title to the equitable owner of the property. (*Jones v. Lapham,* 15 Kas. 544; *Stevens v. Chadwick,* 10 id. 407; *Orrick v. Durham,* 79 Mo. 177; *Woodward v. Dean,* 46 Iowa, 499.) This doctrine has been fully settled by this court. In *Holden v. Garrett,* 23 Kas. 98, this question is discussed. In that case the question was, is a judgment a lien on property, where the legal title is held by the judgment debtor, and the equitable title or interest is held by the mortgagee, so as to defeat the mortgagee's interest in the property? It was held in that case that the judgment was not a lien upon the bare, naked legal title, the equitable title being held by another. The statute provides that judgments shall be liens upon the real estate of a debtor within the county. It was said:

"This evidently contemplates actual and not apparent own-

ership. The judgment is a lien upon that which is his, and not that which simply appeared to be his. How often the legal title is placed in one party when the equitable title, the real ownership, is in others. Now if the judgment is a lien upon all that appears, it will cut off all the undisclosed equitable rights and interests. To extend the lien to that which is not, but appears of record to be the defendant's, is to do violence to the language. 'Real estate of the debtor,' plainly means that which is in fact of or belonging to the debtor." (See *English v. Law,* 27 Kas. 242; *Ransom v. Sargent,* 22 id. 516; *Harrison v. Andrews,* 18 id. 541; *Forwarding Co. v. Mahaffey,* 36 id. 152.)

In this case the attachment binds the property of the debtor from and after the levy. The writ directs the officer to attach "the lands, tenements, goods and chattels, stock, rights and credits, moneys and effects of defendant in his county, not exempt by law;" and when so attached a lien is created. Now is this lien, under this order of attachment, greater than that created by a judgment? Surely not. A judgment is a lien upon all the property of the debtor subject to the payment of his debts, and so is the attachment a lien upon the property of the debtor for the same purpose.

Plaintiff insists, however, that at the time of the levy of the attachment, he had no notice, actual or constructive, of the purchase by Johnson of the property. We think no notice was necessary. The plaintiff in error lost nothing by want of such notice. He had parted with nothing; was not a purchaser in good faith, relying upon the constructive notice that persons without actual notice may rely upon; he was trying to enforce a claim, and, with notice or without, it left him in the same condition. If he had been a purchaser in good faith, relying upon a legal title to the property, he would be protected.

Plaintiff again insists that his attachment at least bound the property and the defendant in error to the extent of the unpaid residue of the purchase-money, and that because Johnson, the defendant, paid the remaining purchase-money after the levy of the attachment, and after he had constructive knowledge of such levy, the plaintiff is entitled to a lien and

judgment against the property to the extent of that unpaid purchase-money at the time of the levy. The court found that at the time of the payment of this purchase-money the defendant had no actual knowledge of the levy of the attachment; that he paid the money in good faith upon his contract, and accepted the title. Under such circumstances the attachment could not bind the purchase-money; the land was not subject to attachment as the property of Armstrong, and consequently did not impart such constructive notice as would bind Johnson in the payment of this money. (*French v. Debow*, 38 Mich. 708.) If he had actual notice of the levy of the attachment upon the property, and of Armstrong's fraud, and with this knowledge paid the purchase-money, he would not be protected. (See *Bush, Sheriff, v. Collins*, 35 Kas. 535; *McDonald v. Gaunt*, 30 id. 693; *Gollober v. Martin, Sheriff*, 33 id. 252.)

Counsel ask what remedy they are to pursue in case the attachment will not bind the property or the purchase-money, and the money cannot be reached by garnishment? In answer we can only say, that all we have to deal with is the facts here presented. What the remedy would be under a given statement of facts, will not be determined in advance. All we do say, and all we are called upon to say in this matter, is, that the attachment created no lien upon the property, and could not operate to restrain and hold the unpaid purchase-money in the hands of the defendant. Good faith on the part of Johnson in the completion of the contract is fully shown by the findings of the court. Counsel, however, insist that the conclusions drawn from these findings are not correct; that the fact of the hurried manner of the purchase, the manner of its sale in bulk, including the farm and personal property, the haste of the transaction, and the consideration paid, were sufficient to place Johnson upon his guard and give notice of Armstrong's fraudulent intent. If these things are badges of fraud and of such a character as to set aside this transaction, we think it would unsettle the real-estate transactions, or many of them, in Kansas. This property was regularly left in the hands of a real-estate agent for

sale; had remained in his hands for some days; he had offered it for sale; it had become known in the neighborhood; Johnson's attention was called to it by a neighbor; he went and found the agent and owner, visited the land, examined the records to see that the title was good, made an offer for the premises, including the stock and farming implements thereon, and this offer was accepted and the contract drawn on the same day; part of the consideration was paid, and the transaction completed on the next day. We see no evidence of fraud in this. Apparent good faith characterized every transaction connected with it, so far as the defendant was concerned. The evidence fully shows this, and further, that the property had been purchased by Armstrong from the plaintiff in bulk, and purchased as an entire transaction, and by Armstrong sold in the same way. And now, because of the fraudulent transaction on the part of Armstrong in the purchase of this property from the plaintiff, and perhaps the sale of it for that reason to Johnson, we are asked to set aside the sale, notwithstanding the fact that good faith is shown on the part of the defendant, and that there are no circumstances connected with the transaction calculated to excite the suspicions of a prudent man, or warn him of the fraudulent intent connected therewith.

It is recommended that the judgment of the court below be affirmed.

By the Court: It is so ordered.

All the Justices concurring.