SIMON GOOD, *Appellant*, V. EUGENE WILLIAMS,
*Appellee.*

No. 16,225.

SYLLABUS BY THE COURT.

1. DEEDS—*Delivery.* Where the vendor of land executes and delivers a deed to his vendee, who thereupon executes a mortgage back to the vendor for part of the purchase price and returns the deed to the vendor to be recorded, the delivery is sufficient to vest the title in the vendee.

2. ——— *Delivery Not Eessential to Vest Equitable Title.* The delivery of a deed is not essential to vest the equitable title to real estate in the grantee. Where the parties have agreed to a sale and conveyance, the deed has been executed, the purchase price paid, and nothing remains for either party to do to complete the transaction except for the grantee to record his deed, he becomes the equitable owner of the land, and it is not subject to attachment for the debts of the grantor.

Appeal from Clark district court; GORDON L. FINLEY, judge. Opinion filed December 11, 1909. Reversed.

*Francis C. Price,* for the appellant.

*Robert C. Mayse,* and *W. W. Harvey,* for the appellee; *H. J. Bone,* of counsel.

The opinion of the court was delivered by

PORTER, J.: Simon Good brought ejectment against Eugene Williams to recover 160 acres of land in Clark county. There was a trial to the court and judgment for the defendant, which the plaintiff seeks to reverse.

Both parties claim through Maggie E. Rhodes, who owned the land on March 19, 1896. On that day she conveyed it by warranty deed, in which her husband joined, to John P. Hazard. The deed was acknowledged the same day, but was not filed for record until April 15, 1897. On April 1, 1896, Hazard gave a purchase-money mortgage back to Maggie E. Rhodes to secure part of the purchase price. This mortgage was ac-

knowledged April 27, 1896, but not recorded until April 16, 1897. On August 3, 1896, before the deed to Hazard had been recorded, a writ of attachment was levied on the land as the property of Maggie E. Rhodes. The land was sold under the writ and a sheriff's deed issued. The defendant, Eugene Williams, claims under the sheriff's deed, and the plaintiff, Simon Good, claims under a deed from John P. Hazard. The trial court held that the defendant acquired an absolute title under the sheriff's deed as against the plaintiff.

The plaintiff's claim is that the judgment is against the weight of the evidence and contrary to law, and, inasmuch as the testimony on the controverted issue is all contained in depositions, we are asked to determine the question upon the evidence and the law. On the other hand, the defendant insists that part of the testimony was oral and that for this reason we are not at liberty to pass upon the evidence. It is true that one witness, Carson, testified orally, but his testimony has no bearing upon the question whether the deed from Rhodes to Hazard was actually delivered or whether the equitable title passed to Hazard. As all the testimony upon these questions is to be found in the depositions we have the same opportunity which the trial court had to determine its force and effect. (*Fountain v. Kenney,* 66 Kan. 797; *Jenson v. Jenson,* 76 Kan. 347.)

It is plain that the attachment levy reached only the actual interest which Mrs. Rhodes had in the land, and not her apparent interest. (*Holden v. Garrett,* 23 Kan. 98; *Burke v. Johnson,* 37 Kan. 337; *Markley v. Investment Co.,* 67 Kan. 535; *McCalla v. Knight,* 77 Kan. 770.) The question, therefore, is what interest Mrs. Rhodes had in the land at the time the attachment was levied. John P. Hazard testified that he obtained the title from F. W. Rhodes and wife in exchange for some Nebraska land which he conveyed to them; that he left the deed with F. W. Rhodes to be recorded; that he paid the consideration for the conveyance to him, and

had done all he agreed to do in the transaction and nothing remained for him to perform in order to make the conveyance complete. He gave the purchase-money mortgage back for the sum of $800, which represented the difference between the value of the land he conveyed to Rhodes and the land in question. F. W. Rhodes lived at the time in Kansas City and was engaged in the real-estate business. He testified that he and his wife conveyed the land to Hazard; that when they purchased it they did so with the expectation of turning it in on a deal with Hazard. He was unable to recollect any reason why the deed and the mortgage were not recorded until April, 1897, but, inasmuch as the transaction occurred more than ten years before his testimony was taken, this can not be considered at all strange. The lapse of time likewise explains the inability of Hazard to state the details of the transaction and to remember what was done with the deed. The best recollection of the witnesses is that the deed from Rhodes and his wife was sent to a bank in Nebraska, to be delivered to Hazard when he executed his mortgage for the balance of the purchase price and a deed conveying the Nebraska land, and it was returned to Rhodes to be recorded.

One contention of the defendant is that there was no valid delivery of the deed to Hazard before the attachment. The question of the delivery of a deed is usually one of intention of the parties, and acts showing an intention to treat the instrument as a conveyance passing title have been held sufficient proof of delivery and acceptance. (*Kelsa v. Graves,* 64 Kan. 777.) In volume 13 of the Cyclopedia of Law and Procedure, at page 563, it is said:

"The fact that after a deed has been delivered by the grantor to the grantee the latter returns it to the former merely for the performance of some act in connection therewith does not negative the previous delivery or operate as a surrender of the title thereby acquired."

To the same effect is *Brooks v. Isbell,* 22 Ark. 488, where the deed was returned to the grantor for the purpose of being recorded.

It is, of course, not sufficient for the defendant to rely upon mere surmise or suspicion that the deed was not actually delivered prior to the time it was recorded. In *Clark v. Akers,* 16 Kan. 166, it was held that where a deed bears one date, the acknowledgment a subsequent date, and the date of the recording is still subsequent to either, in the absence of evidence to the contrary it will be presumed that the deed was delivered at least as early as the day of acknowledgment. We think the evidence shows that the deed was delivered prior to the attachment; but delivery was not essential to vest the equitable title in Hazard.

It appears that Rhodes agreed to convey the land to Hazard in exchange for other land, and that the exchange was made and the consideration paid long before the attachment writ was levied. There is nothing in the evidence to contradict this, so that the equitable title to the land passed to Hazard regardless of whether the deed was actually delivered or not. Nothing but the naked, legal title to the land stood in the name of Maggie E. Rhodes at the time of the attachment. It appears from the testimony of both Rhodes and Hazard that the sale was completed in every respect before the attachment was levied, and that nothing remained for either party to do except to record the deed. Although Hazard's deed had not been recorded, he had made and delivered a mortgage back on the land and had conveyed other land to Rhodes in exchange. Under these circumstances there can be no question but that he became the equitable owner of the land, and that it was not subject to attachment for the debts of Maggie E. Rhodes. Nothing was done by Hazard in the way of purchasing the land after August 3, 1896. Whatever title he had acquired he had acquired before that date.

An attaching creditor is never considered as a *bona*

*fide* purchaser, and his lien attaches merely to the interest of the judgment debtor and to nothing more; and this court has frequently held it to be the duty of courts to protect every equity belonging to other persons. (*Harrison & Willis v. Andrews,* 18 Kan. 535.)

The defendant further contends that the evidence discloses that the interest of Mrs. Rhodes in the land had not been devested at the time of the attachment; that the conveyance by Hazard was not a sale but a makeshift for the purpose of defrauding creditors and placing a fictitious value on the land for speculative purposes. Fraud is never presumed, and we are unable to find any testimony which shows fraud or bad faith in the transaction by which the land was conveyed to Hazard; but, if it was conveyed in fraud of the creditors of Rhodes, they could not acquire the title by a sale under attachment proceedings without bringing an action in equity to set aside the fraudulent sale. (*Webb v. Rockefeller,* 66 Kan. 160.)

On the undisputed evidence no title was acquired by the attachment, and the cause must be reversed with directions to enter judgment for the plaintiff.