# FLESNER v. COOPER.

No. 2855. Opinion Filed August 6, 1913.

(134 Pac. 379.)

1. **TRUSTS—''Resulting Trust.''** Resulting trusts are those which arise where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred from the terms of the disposition, or from accompanying facts and circumstances, that the beneficial interest is not to go to or be enjoyed with the legal title. In such a case, a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended, and whom equity deems to be the real owner.

2. **SAME—Rights of Beneficiary—Conveyance by Trustee.** The interest of the **cestui que trust** in a resulting trust is not a mere ''equity''; it is an equitable estate in the land or other thing of which the legal title is vested in the trustee, and, as such, it may be conveyed, transferred. devised, or otherwise dealt with as property. It is valid and may be enforced not only against the trustee, but against the heirs, devisees, personal representatives, and all others who derive title from him as purchasers with notice, but, being a purely equitable interest, it is cut off and destroyed as against all bona fide purchasers or mortgagees from the trustee for a valuable consideration without notice.

3. **SAME—Parol Evidence.** Resulting trusts are not within the statute of frauds, and may therefore be established by parol evidence, where not otherwise incompetent.

4. **SAME—Evidence to Establish.** It was error to exclude evidence offered for the purposes of showing that the several deeds through which plaintiff's husband deraigned title were in fact executed without consideration, and the grantees therein, as understood and agreed by them, took but the naked legal title to the lands conveyed, and that at all times involved the original grantor had the full beneficial and equitable estate in said lands, and exercised full control and dominion over them.

(Syllabus by Sharp, C.)

*Error from District Court, Payne County;*
*A. H. Huston, Judge.*

Action by Lue Cooper against Gerd Flesner. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Freeman E. Miller,* for plaintiff in error.

Opinion by SHARP, C.   In the year 1889 George W. Gardenhire made homestead entry on the east half of the southeast quarter of section 8, and the west half of the southwest quarter of section 9, township 19 north, range 2 east, of the Indian meridian; said land being located in Payne county.   Thereafter, and on December 1, 1890, he commuted his homestead entry by making final proof and receiving therefor an entryman's receipt, and on March 2, 1891, joined by his wife, executed to his son Clyde a warranty deed to said lands.   Both said final receipt and deed were filed for record April 15, 1891.   On March 28th thereafter the said Clyde Gardenhire, joined by his wife, executed and acknowledged a warranty deed to said land to William G. Scott, which said deed was filed for record April 17, 1891.   On October 23, 1891, the said William G. Scott executed a mortgage on said land to the State Bank of Burton, Kan., for a consideration of $1,200; said mortgage being recorded two days after its execution.   On December 27, 1894, the courthouse at Stillwater, the county seat of Payne county, was destroyed by fire, together with all of the records in the office of the register of deeds.   On the 7th day of January, 1895, the said William G. Scott, by warranty deed, reconveyed said land to the said George W. Gardenhire, which deed was filed for record March 15, 1898.   On the 20th day of November, 1899, George W. Gardenhire sold to plaintiff in error the land in question for a consideration of $3,500, including the crops at the time on the land.   There was paid in cash the sum of $700; $400 being on account of the purchase price of the land, and $300 paid for the crop.   Other payments, according to the contract of purchase at the time executed, were to be made at stated intervals in the future.   All said payments having been made, on May 16, 1901, George W. Gardenhire executed and delivered to the plaintiff in error his warranty deed to said land.

On the part of the defendant in error it is claimed that, prior to the date of the conveyance by Scott to George W. Gardenhire, the former had given to Jake Gardenhire, a son of the said George W. Gardenhire, a deed to said land, which deed was duly filed for record in Payne county prior to the

burning of the courthouse. That in the month of January, 1895, the said Jake Gardenhire died, possessed of said land, leaving surviving him his wife, the defendant in error, who under the law succeeded to an undivided one-half interest in his estate. The jury found, in answer to special interrogatories submitted to them, that Scott did execute and deliver to Jake Gardenhire a deed to the land in controversy, which deed was recorded prior to the burning of the courthouse, but further found that the defendant had no actual notice of the execution and delivery of said deed either before he purchased or finished paying for the land in controversy. There being evidence reasonably tending to support the finding of the jury that the deed to Jake Gardenhire was recorded prior to the destruction of the records by fire, the subsequent burning of the records would not render the same ineffectual as notice to subsequent purchasers, as was held by this court in a former appeal in this case. *Cooper v. Flesner et al.,* 24 Okla. 47, 103 Pac. 1016, 23 L. R. A. (N. S.) 1180, 20 Ann. Cas. 29. If, then, Scott's conveyance to Jake Gardenhire conveyed a title to the beneficial interest in said estate, unless on account of the plaintiff's laches or by reason of her conduct she is estopped from asserting her title, the judgment of the trial court, unless it further be shown that there was error in the proceedings, should be sustained. It is therefore necessary to first consider what interest in the land in controversy Jake Gardenhire acquired by virtue of his deed from Scott. The defendant in the trial below offered evidence to show: That the deed from George W. Gardenhire to his son Clyde was made without any consideration, and that the deed from Clyde to Scott was made at the instance of George W. Gardenhire, and likewise without consideration. That the proceeds of the mortgage, executed by Scott to the Burton bank, pursuant to an arrangement with Scott, were all turned over to George W. Gardenhire. On objection of plaintiff, all evidence offered by defendant tending to prove these facts was by the court excluded. The defendant further offered to show that, at all times prior to the conveyance from George W. Gardenhire to the plaintiff in error, the former exercised full control and

dominion over the land, either occupying it or leasing it out to one of his three sons, Clyde, Bert, and Jake, or to a son-in-law named McCaleb.

While the issues upon which the case was tried are made up of the pleadings, and not the statement of counsel, it is a very significant fact in the case at bar that counsel for plaintiff, in his opening statement to the jury, after referring to certain preliminary facts, stated:

"The evidence will show you that in March following, about three months after he commuted, he conveyed this farm by warranty deed to Clyde Gardenhire; that Clyde Gardenhire a short time afterward conveyed the land by warranty deed to one W. G. Scott. The evidence will convince you, I think, that this Scott was simply Gardenhire's handy man, his man Friday; the testimony of Scott will be in evidence in this case by deposition, and will show you that Scott paid nothing whatever to Gardenhire, to Clyde or George W., for the conveyance of this land to him; the whole transaction, the whole title, the entire ownership and control of this land, as far as the Gardenhires were concerned, the evidence of this handy man Friday or Scott will show you was tainted with fraud, at least from the time it was deeded to Scott. The evidence will show you at Gardenhire's request of Scott the land was mortgaged to a bank at Burton, Kan., for $1,200, and, while Scott signed and executed that mortgage to the bank, he got no part of the money; that the money was paid direct to George W. Gardenhire. * * * Scott's testimony will show you that he retained that title, as far as the record went at least, in his name for two or three years, and then at Clyde or George Gardenhire's request, he made a deed to Jake Gardenhire, and executed and acknowledged that deed and delivered it to Jake; that that transaction took place in Kansas, where he handed Jake the deed."

Upon what theory the court excluded the testimony tending to prove these material facts, we do not know. Notwithstanding the importance of the case, there has been no appearance on the part of the defendant in error in this court. If it was the intention of George W. Gardenhire, in the conveyance by him made, and those subsequently made by his authority (if such was the case), to retain the beneficial interest in the land, though the legal title was in another, in equity, he would continue

to be the real owner, save as against the rights of innocent pur-
chasers from the one holding the legal title. It was competent
for the defendant to show that, notwithstanding the legal title
in turn vested in the several grantees, yet, the conveyances being
without consideration, and the grantor at all times having con-
tinued to exercise full control and ownership over the land,
he in fact was the true owner, and that, from the several con-
veyances and the accompanying facts and circumstances, it was
intended that the beneficial interest should not go to or be en-
joyed by the party holding the legal title. Such fact being es-
tablished, a resulting trust would arise in favor of the grantor.
As is said in Pomeroy's Equity Jurisprudence, sec. 1031:

"In all species of resulting trusts, *intention* is an essential
element, although that intention is never expressed by any words
of direct creation. There must be a transfer, and equity infers
the intention that the transferee was not to receive and hold the
legal title as the beneficial owner, but that a trust was to arise
in favor of the party whom equity would regard as the beneficial
owner under the circumstances. * * * Resulting trusts,
therefore, are those which arise where the legal estate in property
is disposed of, conveyed, or transferred; but the intent appears
or is inferred from the terms of the disposition, or from the ac-
companying facts and circumstances, that the beneficial interest
is not to go or be enjoyed with the legal title. In such case a
trust is implied or results in favor of the person for whom the
equitable interest is assumed to have been intended, and whom
equity deems to be the real owner. This person is the one from
whom the consideration actually comes, or who represents or
is identified in right with the consideration; the resulting trust
follows or goes with the real consideration."

Pomeroy's Equity Jurisprudence, secs. 155, 1030, 1031 *et
seq.; Morgan v. Field,* 35 Kan. 162, 10 Pac. 448; *Sanders v.
Steele,* 124 Ala. 415, 26 South. 882.

If George W. Gardenhire continued to be the sole beneficial
owner of the land, then there was vested in the several grantees
only the naked, legal title, which would be held by them in turn
in trust for the benefit of the equitable owner, and for no other
purpose. The estate thus held by the beneficial owner could be
conveyed as any other estate, while one holding the legal title

would be without right or authority to deal with it other than as contemplated by the parties to the trust. In section 1043, Pomeroy's Equity Jurisprudence, in this connection, it is said by the author:

"The interest of the *cestui que trust* in a resulting trust is not a mere 'equity'; it is an equitable estate in the land or other thing of which the legal title is vested in the trustee, and, as such, it may be conveyed, transferred, devised, or otherwise dealt with as property. It is valid and may be enforced not only against the trustee, but against the heirs, devisees, personal representatives, and all others who derive title from him as volunteers or purchasers with notice, but, being a purely equitable interest, it is cut off and destroyed as against all *bona fide* purchasers or mortgagees from the trustee for a valuable consideration and without notice. The *cestui que trust* is entitled to the remedy of compelling a conveyance or assignment of the legal estate to himself by the trustee, or perhaps, in some instances, of compelling the trustee to hold the property for the benefit of the beneficiary, and subject to his power of enjoyment, control, and disposition."

Defendant in error could occupy no better position than her former husband, Jake Gardenhire. She cannot have the position of an innocent purchaser, but must take the title which the law casts upon her husband, affected with the same trusts and equities, if any, as it was when held by him. *Springer v. Young et al.*, 14 Ore. 280, 12 Pac. 400. If, as stated, Jake Gardenhire was an innocent purchaser for value, and without notice of the equities of his father, then he would be unaffected by the trust, and at his death his wife, the defendant in error, would succeed to her statutory interest in his estate, unless it appear that by reason of laches on her part, or from her course of conduct, she is estopped from asserting her title.

It was therefore error for the trial court to exclude testimony, otherwise competent, offered for the purpose of proving the character of the estate of the said George W. Gardenhire, and of those holding the legal title through *mesne* conveyances. In such cases parol testimony is admissible to prove the intention of the parties to the transactions. In *McCoy v. McCoy*, 30 Okla.

379, 121 Pac. 176, Ann. Cas. 1913C, 146, many authorities are collected and cited in support of this proposition. It is there said:

"Hence, if there is a trust of any class involved in this case, it is one arising from the facts, and becomes a trust by operation of law. If, from the condition of facts existing, a trust arises or results by operation of law, then it may be valid whether the agreement from which the condition arises be in writing or in parol, and, if the facts alleged in the petition are such that from them the law presumes a trust, or such that a trust results therefrom, it becomes one which by the authorities is universally treated as an implied trust or a resulting trust, and is not within the statute of frauds."

Pomeroy's Equity Jurisprudence, secs. 1040, 1041; *Sheehan v. Sullivan et al.,* 126 Cal. 189, 58 Pac. 543; *Stone v. Manning,* 103 Tenn. 232, 52 S. W. 990.

Independent of the other considerations to which attention is called, the case is one that must turn upon the character of the estate held by Jake Gardenhire at the time of his death. If by virtue of his deed he acquired only a naked, legal title, in no event could the plaintiff recover. While, on the other hand, if by reason of his purchase he acquired both the legal and equitable title to the land, his surviving wife would be entitled to recover a one-half interest in it, unless, as we have already seen, on account of her own acts, she is barred of a right to recover.

The object of the senior Gardenhire in divesting himself of the legal title to the land, if on a further trial such fact should be shown, may or may not be of controlling importance. We cannot here at this time assume that his purpose was fraudulent or illegal, or what would be the effect thereof upon the parties to this action in the event that either fact was found.

For the reasons stated, the cause should be reversed and remanded, and a new trial granted.

By the Court: It is so ordered.