# J. I. CASE THRESHING MACH. CO. *et al.* v. WALTON TRUST CO. *et al.*

### No. 3095.   Opinion Filed November 18, 1913.

#### (136 Pac. 769.)

1. **TRUSTS — Equitable Interest — ''Resulting Trust.''** Resulting trusts are those which arise where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred from the terms of the disposition, or from accompanying facts and circumstances, that the beneficial interest is not to go to or be enjoyed with the legal title. In such a case, a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended, and whom equity deems to be the real owner.

2. **SAME—Interest of Corporation.** Where a deed was executed by a corporation to one of its officers, without consideration, that the grantee might procure a loan thereon for the corporation's benefit, which loan was procured and the entire consideration paid over to the grantor in the deed, there being no fraud in the transaction; and where shortly thereafter the land was reconveyed to the corporation, which assumed payment of the mortgage debt—held, that the only interest acquired by the grantee was the naked legal title, and that the equitable estate in the land remained in the grantor, which was in fact the true owner.

3. **SAME—Parol Evidence—Establishment of Resulting Trusts.** Resulting trusts are not within the statute of frauds, and may therefore be established by parol evidence, where not otherwise incompetent.

4. **JUDGMENT—Liens—Property Subject—Legal Title—Trusts.** The lien of a judgment does not attach to the mere legal title to land, standing in the name of the judgment debtor, when the equitable estate is in another, and a transitory seisin of lands by the judgment debtor, in trust for another, will not subject them to the lien of a judgment.

5. **SAME.** This rule applies where the judgment debtor, although having the legal title to the lands, holds it subject to a resulting trust in favor of another.

6.  **SAME.** The judgment lien contemplated by section 5941, Comp. Laws 1909 (Rev. Laws 1910, sec. 5148) is a lien only on the actual interest of the judgment debtor, whatever that may be; therefore, though he appear to have an interest, if he has none in fact, no lien can attach.

(Syllabus by Sharp, C.)

*Error from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

Action by Walton Trust Company against the J. I. Case Threshing Machine Company and others. Judgment for plaintiff, and the threshing machine company and another bring error. Affirmed.

*Chas. A. Cook,* for plaintiffs in error.

*J. B. Furry,* for defendant in error Walton Trust Co.

*Gibson & Thurman,* for defendants in error Bank of Commerce, James K. Edmonds, and Susie Edmonds.

Opinion by SHARP, C.   This is a suit brought by the Walton Trust Company against James K. Edmonds, Susie Edmonds, the Bank of Commerce, the Caney Creek Oil Company, Charles C. O'Dell, the Indian Land & Trust Company, W. M. Martin, J. I. Case Threshing Machine Company, and J. L. Wisener, sheriff, the primary purpose of which was to foreclose six certain real estate mortgages, given by the defendants Edmonds and· wife to the plaintiff, to secure the payment of a loan of $5,472, together with interest, the payment of which was assumed by the defendant Bank of Commerce. The other defendants were made parties for the purpose of determining any interest they might have in and to said real estate, and the priority of all claims or liens thereon. The defendant J. I. Case Threshing Machine Company answered setting up a judgment lien on the lands included in the mortgage foreclosure proceedings, which judgment was recovered by it on the 6th day of July, 1907, in an action theretofore pending in the United States Court for the Western District of the Indian Territory at Muskogee, in which the Territorial Land & Trust Company, J. W. Edmonds, and others were defendants, and on which judgment

there was a ·balance due and unpaid of $1,712.32, and interest, and charging that said judgment was duly entered and indexed in the records of said United States court, and constituted a lien upon the lands of the said J. K. Edmonds, situated within Muskogee county, prior in point of time, and paramount to the several mortgages executed by Edmonds and wife to the Walton Trust Company. In the reply of the latter company to the answer of the threshing machine company, as well as in the answer of the Bank of Commerce, it was contended that the defendant J. K. Edmonds at no time had any beneficial interest in the lands conveyed to him by the Bank of Commerce on the 8th day of February, 1908; that the said Bank of Commerce was, from June 7, 1905, the owner by purchase from one C. K. Marks of all and singular the lands in question; and that it had been and was at all times thereafter, including the date of the execution of the deed to Edmonds, and then was, the real owner, subject to no equities save and except the lien of the mortgages in process of foreclosure; that its deed to said lands had been placed of record on the day following its purchase, and that on the 8th day of February, 1908, said Bank of Commerce, being desirous of borrowing money upon the security of said land, and for convenience, executed an instrument in form a warranty deed to the defendant Edmonds, which said deed was placed of record in the office of the register of deeds of Muskogee county on February 19, 1908; that although it was in form a warranty deed, reciting a cash consideration, no consideration in fact passed to said bank for said conveyance, but the sole and only purpose was to enable the Bank of Commerce to procure a loan thereon, of the plaintiff trust company, the same to be secured by mortgage upon said lands; that said Edmonds was the holder of the naked legal title thereto, for the accommodation and use of the Bank of Commerce, of which bank he was at the time an officer and employee; that the entire proceeds of the several mortgages by him executed to the Walton Trust Company had been then and there paid over to the said Bank of Commerce; and that thereafter, and on the 30th day of April, 1908, said Edmonds, joined by his wife, without con-

sideration, reconveyed the legal title of all said land to said bank. It was further contended on the part of the trust company and the bank that the judgment had never been entered and indexed in the records required by law to be kept by the clerk. The conclusions that we have reached render unnecessary a consideration of this question.

The case was tried largely upon an agreed statement of facts and admissions appearing in the pleadings. Upon the issue of what title Edmonds received by the deed from the bank, no other evidence was introduced than the admission of the execution of the deed, and the testimony of the defendant Edmonds. This testimony is brief, and upon this issue is as follows:

"Q. Do you remember the transaction between yourself and the Bank of Commerce when the land in controversy was conveyed to you on or about the 8th day of February, 1908? A. I do. Q. State what, if any, consideration was paid by you to the bank of Commerce for that conveyance to you. A. Not a cent. Q. Do you know why the land was conveyed to you by the Bank of Commerce, Mr. Edmonds? A. To get a loan on it. They wanted Jim Dooley to take it in his name, but his wife objected to signing a mortgage to it. I told Mr. Rowsey I would do it. I understand they would not make a loan to a corporation. Q. Subsequently, on the 30th day of April, 1908, you reconveyed this land by deed to the Bank of Commerce. State whether or not you received any consideration from the Bank of Commerce for this conveyance. A. No, not a cent. Q. State whether or not you had any interest in the land during the time that it was in your name, or whether it was conveyed to you solely for the purpose of making this loan, as you say. A. It was conveyed to me for the purpose of making this loan. Q. At the time you and Mrs. Edmonds signed the notes and mortgages described in the plaintiff's petition in this case, to procure a loan on the land in controversy in this case, what was the agreement, if any, between you and the Bank of Commerce as to who would pay the mortgage? A. Well, I was to be out no expense whatever to pay the loan or anything. Q. Was it the understanding that the Bank of Commerce assumed the payment of these notes and mortgages? A. Certainly. Q. Was that the agreement when you conveyed the land back to the Bank of Commerce on April 30th? A. Yes, sir. Q. Who was Mr. Rowsey? A. President of the Bank of Commerce, I think;

752     SUPREME COURT OF OKLAHOMA.

J. I. Case Threshing Mach. Co. et al. v. Walton Trust Co. et al.

president or cashier.    Q. This arrangement was made through him?   A. Yes, sir."

While a part of this testimony was objected to, the witness was not cross-examined, and the facts testified to stand admitted.

It is insisted on the part of the plaintiffs in error that: (1) Regardless of the foregoing evidence, by the execution of the deed from the bank to Edmonds, both the legal and equitable title to the lands included therein passed to and vested in the grantee, and that the judgment, having been duly entered and indexed, became a lien thereon, prior to that of the mortgagee, the Walton Trust Company; (2) the court erred in admitting the above parol testimony of the defendant Edmonds.

Obviously, at no time was James K. Edmonds the owner of other than the naked legal title, and that at all times the equitable estate in said lands remained in the grantor, the Bank of Commerce, who remained in possession and continued to exercise full control and ownership thereover, there can be no question. The very purpose of the transfer was to enable the bank, acting through the medium of its officer, to obtain a loan, not for the individual benefit of the grantee, but of the bank. None of the consideration named in the deed was paid by the grantee, and no beneficial estate in the land was at any time claimed by him. It is not charged that the conduct of the bank or Edmonds was in any way fraudulent; in fact, the former assumed the payment of the borrowed money. Nor is there claim that a gift was intended.

No better illustration of a trust arising by operation of law could be stated than here. The conveyance was made without consideration to one occupying a position of confidence and trust toward the grantor. Immediately thereafter a loan for the benefit of the grantor was procured, and the entire proceeds paid over to the bank. The latter at all times remained in possession of the land conveyed, and assumed payment of the debt contracted in the name of its officer, and in a few weeks thereafter a deed of reconveyance was made to the bank; no consideration therefor being received. In *Flesner v. Cooper, ante,*

134 Pac. 379, we said that a resulting trust arose where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears, or is inferred from the terms of the disposition, or from accompanying facts or circumstances, that the beneficial interest is not to go to or be enjoyed with the legal title; that in such a case a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended, and whom equity deems to be the real owner. By section 7268, Comp. Laws 1909 (Rev. Laws 1910, sec. 6660), it is provided that when a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made, while by section 7267, *Id.* (Rev. Laws 1910, sec. 6659), trusts created by operation of law are expressly recognized. Although the deed executed by the bank to Edmonds purported on its face to be a warranty deed, conveying the absolute title, yet having been made wholly without consideration by a corporation to one of its officers, for the corporation's benefit, while no writings were entered into declaratory of the terms and conditions and the purposes for which the conveyance was made, it is clear that it was not intended by the deed to convey to the grantee the absolute title or to vest in him a beneficial interest in said lands, but instead to convey only the naked legal title.

Section 5941, Comp. Laws 1909 (Rev. Laws 1910, sec. 5148), in force at the time, under which it is claimed the judgment lien of the plaintiff in error attached, provides that judgments of courts of record in this state shall be liens upon the real estate of the debtor within the county in which the judgment is rendered from and after the time the judgment is entered on the judgment docket. Section 5968, *Id.* (Rev. Laws 1910, sec. 5152), provides that all real estate not bound by the lien of a judgment, as well as goods and chattels of the debtor, shall be bound from the time they are seized in execution. It goes without saying that the real estate of one party cannot be made subject to a judgment in favor of a stranger, and that only the

property of the judgment debtor can be subjected to its satisfaction, as it would be unconscionable and violative of the first rule of property to hold that that which belongs to one may be taken on execution, or made liable to the satisfaction of the debt of another.

The lien of a judgment does not attach to the mere legal title to the land existing in the judgment debtor, when the equitable and beneficial title is in another, and a transitory seisin of lands by the judgment debtor, in trust for another, will not subject the lands to the lien of a judgment. This rule applies where the judgment debtor, although having the legal title to the lands, holds it subject to a resulting trust in favor of another. Black on Judgments, sec. 421; 23 Cyc. 1371. A judgment is a lien only on the interest of the debtor, whatever that may be; therefore, though he seems to have an interest, if he had none in fact, no lien can attach. Freeman on Judgments, secs. 357, 357a.

Referring to Dassler's Comp. Laws 1879, p. 656, sec. 419, of the state of Kansas, of which section 5941 (5148), *supra*, as regards this question, is a counterpart, Judge Brewer, in *Holden v. Garrett*, 23 Kan. 99, in a very thoroughly considered opinion, said:

"This evidently contemplates actual and not apparent ownership. The judgment is a lien upon that which is his, and not that which simply appears to be his. How often the legal title is placed in one party when the equitable title, the real ownership, is in others! Many reasons induce this—convenience in managing, facility in passing title, number of parties interested, and others needless to mention. And yet the record discloses only the naked legal title. Now if the judgment is a lien upon all that appears, it will cut off all the undisclosed equitable rights and interests. To extend the lien to that which is not, but which appears of record to be, the defendant's, is to do violence to the language. 'Real estate of the debtor' plainly means that which is in fact of or belonging to the debtor."

See, also, *Baird v. Williams*, 4 Okla. 173, 44 Pac. 217; *Harrison v. Andrews*, 18 Kan. 535; *Bowling v. Garrett*, 49 Kan. 504, 31 Pac. 135, 33 Am. St. Rep. 377; *Markley v. Carbondale Investment Co.*, 67 Kan. 535, 73 Pac. 96. This rule, sup-

ported by many authorities unnecessary to cite, was the law in Arkansas, hence by congressional enactment the law in force in the Indian Territory at the time of the rendition and recordation of the judgment in favor of the J. I. Case Threshing Machine Company, and is announced in *Watkins v. Wassell,* 15 Ark. 73, in the following language:

"The lien of a judgment is subject to every equity that exists against the land in the hands of the debtor, at the time of docketing the judgment, and the court of chancery will protect the equitable rights of third persons against the legal lien, and will limit that lien to the actual interest which the judgment debtor has in the estate."

*Byers v. Engles,* 16 Ark. 543; *Tuley v. Ready,* 27 Ark. 98; *Doswell v. Adler,* 28 Ark. 83; *Apperson v. Burgett,* 33 Ark. 328; *Jones et al. v. Fletcher,* 42 Ark. 422.

It may be asserted as a rule very generally recognized that a judgment creditor is not a *bona fide* purchaser. He parts with nothing to acquire his lien. He is in a very different position from one who has bought and paid, or who has loaned, on the face of the recorded title. The equities are entirely unlike, as one has, and the other has not, parted with value relying upon the record. If the real avails over the apparent title, the one is no worse off than before he acquired his lien—has lost nothing; while the other has lost the value paid or loaned. Hence equity will help the latter, while it cares nothing about the former. *Harrison et al. v. Andrews,* 18 Kan. 535; *Holden v. Garrett, supra; Burke v. Johnson,* 37 Kan. 337, 15 Pac. 204, 1 Am. St. Rep. 252; *McCalla v. Knight Investment Co.,* 77 Kan. 770, 94 Pac. 126, 14 L. R. A. (N. S.) 1258; *Good v. Williams,* 81 Kan. 388, 105 Pac. 433, 135 Am. St. Rep. 392; *Allen v. McGaughey,* 31 Ark. 253; *Williams v. McIlroy,* 34 Ark. 85. Such is the case of plaintiff in error. Its judgment against Edmonds antedates by many months the transfer from the bank to Edmonds. It extended no credit on the strength of the record title, and could not have been influenced in its previous dealings by the subsequent transaction between its debtor and the bank.

Resulting trusts not being embraced within the statute of frauds, their existence need not be evidenced by any writing, and may therefore be established by parol evidence. *McCoy v. McCoy*, 30 Okla. 379, 121 Pac. 176, Ann. Cas. 1913C, 146; *Flesner v. Cooper, ante,* 134 Pac. 379; Pomeroy's Equity Jur. secs. 1036, 1040, 1041; 1 Greenleaf on Evidence, sec. 266; Underhill on Evidence, 312; 9 Enc. of Evidence, title "Parol Evidence"; 1 Perry on Trusts, title "Resulting Trusts."

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.