## GRAHAM, Adm'x, v. DUNLAP et al.

No. 24458.   Nov. 5, 1935.

Rehearing Denied Sept. 22, 1936.
Application for Leave to File Second Petition for Rehearing Denied March 9, 1937.

W. A. Barnett, R. M. Cavanaugh, and Norvell & Norvell, for plaintiff in error.

V. R. Biggers, S. W. Biggers, Tom Biggers, A. S. Wells, and Tom C. Greer, for defendants in error.

RILEY, J. This action was commenced by defendants in error, Elizabeth Dunlap, Priscilla Graham, Arthur Turner, and Joella Crenshaw, joined by Eugene Walker, against A. E. Graham and the Superior Oil Corporation.

Before service of summons was had upon defendant A. E. Graham, he died, leaving as his heirs at law his widow, Alice B. Graham, and two children, Mary Lou Graham and A. Staneart Graham.

Alice B. Graham was duly appointed administratrix of the estate of A. E. Graham, deceased, and later a second application was made to revive in the name of the heirs at law of A. E. Graham, naming them, parties defendant.

Thereafter an order was made reviving the cause in so far as it affected the estate of A. E. Graham, deceased, in the name of Alice B. Graham, administratrix of the estate of A. E. Graham, deceased, and Alice B. Graham, and Mary Lou Graham, a minor, heirs at law of A. E. Graham, deceased; an order was made appointing a guardian ad litem for defendant Mary Lou Graham, a minor. A. Staneart Graham appeared to have been a nonresident.

Later an order was made, upon proof of service by publication of notice of application to revive, reviving the cause in the name of A. Staneart Graham as heir at law of A. E. Graham, deceased.

Thereafter an amended petition was filed alleging in substance that plaintiffs were the owners of an undivided interest in 120 acres of land described as the N.½ N.E.¼ and the S.W.¼ N.E.¼, section two (2) township 9 N. range 5 E., in Seminole county. That about August, 1927, A. E. Graham, then a practicing attorney, was employed by plaintiffs as their attorney in connection with straightening up their title in and to said land; that in consideration of his services, it was orally agreed that plaintiffs should execute an oil and gas

lease to said A. E. Graham, who was to negotiate with some oil company or companies for the drilling of a well on the land, and that in payment of his services in that behalf, he, Graham, was to receive one-half of whatever bonus he might receive from the sale of such lease, and that plaintiffs did execute an oil and gas lease covering their interest in said land to said A. E. Graham; that thereafter Graham entered into an agreement with the Superior Oil Corporation whereunder he assigned said lease to said oil corporation, for which the oil corporation agreed to pay to Graham the proportionate part of a three-eighths working interest under said lease; that pursuant thereto the Superior Oil Corporation went into possession of said land, and developed the same for oil and gas and produced large quantities of oil therefrom, and under said agreement paid said Graham large sums of money covering the three-eighths working interest under said lease, and that said Graham had failed and refused to account to plaintiffs for their one-half part thereof.

The prayer was for an accounting against the estate of said A. E. Graham, and for a decree declaring plaintiffs to be entitled to one-half of the money derived from said three-eighths overriding working interest.

The Superior Oil Corporation filed its separate answer, neither affirming nor denying the allegations of plaintiffs, but did plead that by the amended petition the only relief sought by plaintiffs was that said Superior Oil Corporation be enjoined from making further payments to the estate of A. E. Graham, as to the interest claimed by plaintiffs, and in this regard pleaded that said corporation had been placed in the hands of a receiver in an action theretofore brought in the district court of Tulsa county, and that John Rogers had been appointed and was then acting as receiver for said company, and suggested that whatever relief plaintiffs were entitled to as against the oil corporation should be applied for in an appropriate application to the court appointing the receiver, and not by injunction against the Superior Oil Corporation.

The other defendants, after unsuccessful demurrers, filed their separate answers, but only the answer of Alice B. Graham, as administratrix, need be noticed. She pleaded that she neither admitted nor denied the ownership alleged by plaintiffs, but admitted that at one time plaintiffs were the owners of an interest in the real estate described. She then pleaded that no claim for any money alleged to be due to plaintiffs had ever been presented to her as administratrix.

She specifically denied that A. E. Graham at the time of his death was under contract of any kind to pay plaintiffs or either of them any part of the proceeds received from the oil produced from said land, and denied that deceased was holding any interest in said property in trust for plaintiffs, and alleged that whatever interest deceased held in the leasehold estate created by the lease to him was absolute, and that if it had ever been contingent or conditional, the condition had been fully performed prior to the death of A. E. Graham; she specifically denied that A. E. Graham, deceased, was indebted to plaintiffs in any sum. She also pleaded, by way of an alleged former adjudication of the rights of the parties, that:

"By way of further answer, this defendant says that in consolidated causes No. 9070 and 10539, tried in the district court of Seminole county, Oklahoma, the parties plaintiff herein and the said A. E. Graham, deceased, were parties plaintiff and defendant in said consolidated causes, and the rights of the parties in and to the oil and gas lease and leasehold estate covering the lands described in plaintiff's amended petition were fully determined and adjudicated. That a true and correct copy of the journal entry of judgment in said consolidated causes is hereto attached, marked 'Answering Defendant's Exhibit A,' and made a part of this answer.

"That on account of said judgment and decree in said consolidated causes fixing, decreeing, and establishing the title in and to said leasehold, and on account of said judgment becoming a final judgment of the district court of Seminole county, Oklahoma, and the question of plaintiff's title to an interest in said leasehold estate is now res adjudicata, the same having been determined in said consolidated causes."

The cause was tried to the court without a jury, a part of the issues being referred to a referee for report, resulting in a judgment in favor of defendant as against plaintiff Eugene Walker, and in favor of the other plaintiffs sustaining their contention to the effect that the land was leased to deceased by plaintiffs under an agreement to pay plaintiffs one-half of whatever bonus might be recovered for the assignment of the lease, and that Graham had received therefor a bonus in oil amounting to three-eighths of the seven-eighths of the oil produced from the lease after paying

the expense of production, and that plaintiffs were entitled to their proportionate part of the one-half of the three-eighths working interest retained by deceased.

From this judgment and decree Alice B. Graham, administratrix, appeals.

There are 24 assignments of error, a number of which are not covered by the motion for a new trial. They are presented under four general propositions, "A," "B," "C," "D."

Under proposition "C," which we consider first, it is contended that the court erred in overruling a motion to dismiss, for the reason that the suit had abated as to defendant Graham, in that no summons was served upon him, and therefore, the action could not be revived in the name of the administratrix as a party defendant.

In support of this proposition cases are cited which hold that an action may not be revived as against an administrator where suit was filed, but no summons had been served upon the decedent during his lifetime. But they are cases from states which provide by statute that an action is deemed as pending when summons has been served.

But section 164, O. S. 1931, provides that a civil action may be commenced in a court of record by filing in the office of the clerk of the proper court a petition and causing a summons to be issued thereon.

Section 569, O. S. 1931, provides that no action pending in any court shall abate by the death of either or both the parties thereto except actions for libel, slander, malicious prosecution, for a nuisance, or against a justice of the peace for misconduct in office.

Section 575 provides that "when one of the parties to an action dies, * * * if the right of action survive in favor of or against his representatives or successors, the action may be revived and proceed in their names."

The action had been commenced, within the meaning of section 164, before the death of A. E. Graham. It was, therefore, pending at the time of his death, and did not abate on account of his death.

The land here involved was the allotment of Victoria Walker, deceased, a Seminole Indian, enrolled on the Freedman Seminole Rolls. Dina Walker, her mother, owned said allotment at the time of her death in 1925.

In 1927, plaintiff Elizabeth Dunlap owned an undivided one-fifteenth interest in and to the W.½ of the W.½ of the N.E.¼ of section 2, or an undivided one-fifteenth interest in 40 acres of the 120 acres, and the other plaintiffs, Priscilla Graham, Arthur Turner, and Joella Crenshaw, each owned an undivided one-fortieth interest in the entire 120 acres. Jesse Brown, a brother of Joella Crenshaw, Priscilla Graham, and Arthur Turner, owned an interest in the land.

Jesse Brown leased his interest in the land to A. E. Graham, and assisted Graham in procuring leases from the plaintiffs in this action. They were in the usual form, the expressed consideration being one dollar, and other valuable consideration, and the covenants contained in the lease to be performed by the lessee. They provided for one-eighth royalty from the oil and gas to be paid to lessors.

A. E. Graham entered into an agreement with the Superior Oil Corporation under which said leases, together with leases from other owners, were assigned to the Superior Oil Corporation. The agreement provided that the Oil Corporation would pay to A. E. Graham three-eighths of the seven-eighths of the proceeds from the oil and gas to be produced from said premises after drilling and operating expenses were paid. However, the arrangement seems to have been that the leases covering plaintiffs' interest in the 120 acres here involved were put into the contract along with other leases. The contract was for the payment to Graham of three-eighths of the proportionate net proceeds from the land as a whole, regardless of the particular subdivision upon which the well or wells might be drilled.

The court found that the working interest in the lease retained or held by Graham had, as of March 31, 1932, produced the net sum of $513,457.95, which, under the agreement with the Superior Oil Corporation, amounted to a bonus for the conveyance of the leases. It is the proportionate part thereof representing the plaintiffs' interest in the land that is involved in this suit, so far as the Graham estate is concerned. Plaintiffs claim one-half of whatever represents their respective interests. That is, that Graham agreed to give them one-half of whatever he received as a bonus for the leases, and the court found the above as representing the entire three-eighths interest of Graham, and the correctness of the amount so found is not questioned. The

court found that the interest of plaintiff Elizabeth Dunlap was an undivided one-fifteenth interest in 40 acres of the land, representing one-forty-fifth interest in the whole 120 acres, and this interest is not questioned. The court also found that each of the other plaintiffs owned an undivided one-fortieth interest in the entire 120 acres, and the ownership of such interest is not questioned.

Plaintiff in error contends that A. E. Graham became the absolute owner of the leasehold estate by the terms of the leases, and was entitled to all the benefits derived from this agreement with the Superior Oil Corporation. Defendants in error contend that they were entitled under their agreement with Graham to receive one-half of whatever Graham obtained by the agreement with the Superior Oil Corporation, to the extent of their interest in the land.

The court found:

"The court further finds that on or about said date A. E. Graham represented to the plaintiffs, and each of them, that if he could have in his own name a lease for oil and gas for their respective interests in the leasehold estate in said land, he could and would handle the lease on the entire tract, so as to secure a bonus for the lessors, and that in the event he could secure a bonus, that he would charge for his services one-half ($\frac{1}{2}$) of such bonus, and of the remaining one-half ($\frac{1}{2}$) he would pay to these plaintiffs such proportion as their interest in the leasehold estate have to the entire leasehold of one hundred and twenty (120) acres."

The court further found that plaintiffs executed their lease to Graham under said representations and agreement, and:

"* * * That said leases were so executed and delivered to the said A. E. Graham in trust for the mutual benefit of all the plaintiffs."

And:

"The court further finds that the bonus in oil provided for was reserved for the benefit of each and all of the plaintiffs and A. E. Graham; that A. E. Graham was entitled to receive one-half ($\frac{1}{2}$) thereof, and that each of said plaintiffs herein would be and is entitled to receive such portion of said bonus as his interest in the leasehold estate bore to the entire estate of one hundred and twenty (120) acres."

The principal question presented is whether or not the findings and judgment are sustained by the evidence.

On July 27, 1927, A. E. Graham submitted in writing a proposition to Jesse Brown, which was accepted by him, as follows:

"July 27, 1927.

"Jesse Brown,

"509 East 5th Street,

"Okmulgee, Oklahoma.

"Dear Sir:—

"In Re: Leasehold NE¼ NE¼ and W½ of NE¼ of Section 2, Township O, North, Range 5 East, Seminole County.

"In consideration of you giving to me a lease on your interest in and to the above-described land, and your assistance in obtaining from your associates a lease, I hereby agree to give you one-half of whatever part, either in money or interest in said leasehold that I may receive for same by reason of sale or otherwise. It being the intention that you shall share one-half of my interest in the interest so obtained by me from you and your associates.

"A. E. Graham.

"Acceptance:

"Jesse Brown."

There is evidence which shows that Graham instructed Jesse Brown to tell plaintiffs that if they would make the leases, he, Graham, would go ahead and get the property drilled and give them, plaintiffs, one-half of whatever he (Graham) got out of it; that Graham prepared the leases and gave them to Brown, to have plaintiffs execute same; that Brown did represent to plaintiffs as an inducement for them to execute the leases that Graham would give them one-half of whatever he got for the leases; that no money was paid to plaintiffs for the execution of the leases. It may be said that the evidence is all but conclusive on this point.

There is some evidence tending to show that before the leases were executed some attempt was made to have plaintiffs execute deeds or mineral deeds to Jesse Brown, with the view that Brown, in turn, would lease the land to Graham; that several such deeds were prepared by Graham and given to Brown to get plaintiffs to execute same, and that in fact several such deeds were executed by plaintiffs, but when they were presented to Graham he rejected them as not being sufficient or being in some way defective.

The evidence is that the plan of Graham

was finally consummated by taking the leases direct from plaintiffs as above stated.

There is abundant evidence to sustain the findings and judgment of the court. In fact no other findings or judgment could have been properly made and entered under the evidence.

Much of plaintiff in error's brief is devoted to the proposition that all or substantially all of the evidence of defendants in error was erroneously admitted because it was an attempt to vary the terms of the written instruments by parol testimony.

There is no attempt to vary the terms of the leases. They are given full force and effect. They are, as far as the record in this case discloses, being carried out to the letter.

The real question in this case is: What was the real agreement and consideration for the execution of the leases here involved, and what was the effect thereof?

In Flesner v. Cooper, 39 Okla. 133, 134 P. 379, it is held:

"Resulting trusts are those which arise where the legal estate in property is disposed of, conveyed or transferred, but the intent appears or is inferred from the terms of the disposition, or from accompanying facts and circumstances, that the beneficial interest is not to go to or be enjoyed with the legal title. In such a case, a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended, and whom equity deems to be the real owner. * * *

"Resulting trusts are not within the statute of frauds, and may therefore be established by parol evidence, where not otherwise incompetent."

It may be observed that the intent of the parties that the full beneficial interest is not to go or be enjoyed with the legal title may appear or be inferred from the terms of the disposition, or from the accompanying facts and circumstances.

In McCoy v. McCoy, 30 Okla. 379, 121 P. 176, the distinction between express trusts and resulting trusts is pointed out. It is therein said:

"If from the condition of facts existing, a trust arises or results by operation of law, then it may be valid whether the agreement from which the condition arises be in writing or in parol."

That the evidence fully supports the finding of the court there can be do doubt.

There is some contention that the rights of plaintiff as against A. E. Graham were fully adjudicated in a consolidated action tried in the district court of Seminole county, numbered 9070 and 10539.

The contention cannot be sustained. The question decided in that case was the ownership of the land and the separate interest owned by the several parties thereto. The leases here involved were there held to be valid leases, but there was no question there decided as to the rights of these plaintiffs to participate in the proceeds of the sale or transfer of the leases on the five-eighths part thereof to the Superior Oil Corporation.

An examination of the record does not disclose any substantial error.

The judgment is affirmed.

McNEILL, C. J., and BAYLESS, BUSBY, WELCH, PHELPS, and CORN, JJ., concur. OSBORN, V. C. J., and GIBSON, J., dissent.