RICHARDSON v. AMERICAN SURETY CO. et al.

No. 12830—Opinion Filed Jan. 15, 1924.

Rehearing Denied Feb. 26, 1924.

1. **Appeal and Error—Review of Equity Case—Sufficiency of Evidence.**

Where, in an action of purely equitable cognizance tried to the court without the intervention of a jury, the finding of the court is not clearly against the weight of the evidence and comes within the principles of equity, the decision of the lower court should be and must be affirmed.

2. **Subrogation — Rights of Coplaintiff in Equity Case.**

In an equity case, where the court has all the parties before it and has full jurisdiction of the parties and the subject-matter of the action, and properly finds that there is an indebtedness due from the defendant to one of the plaintiffs in the action, and further finds there is an indebtedness due from this plaintiff to his coplaintiff in the action and this plaintiff has joined with his coplaintiff for the purpose of carrying out an expressed intention to aid and assist his coplaintiff in the recovery of this indebtedness, due from the defendant, it is clearly within the jurisdiction of the trial court, in the exercise of its equity power, to order the payment of the amount found due to his coplaintiff in discharge of the debt by right of subrogation.

3. **Same—Doctrine of Subrogation.**

The principle to be derived from the doctrine of subrogation is that it is born of equity and results from the natural justice of placing the burden where it ought to rest. It does not flow from any fixed rule of law, but rather from principles of justice, equity, and benevolence. It is a purely equitable result, depending like other equitable doctrines upon the facts and circumstances of each particular case to call it forth. It is a device adopted or invented by equity to compel the ultimate discharge of a debt or obligation by him, who in good conscience ought to pay it.

4. **Same—Application.**

No doctrine of equity jurisprudence is more beneficent in its operation than is subrogation, and perhaps none stands in higher

# RICHARDSON V. AMERICAN SURETY CO. 265

favor. No general rule can be laid down, which will afford a test in all cases for its application, and its exercise depends upon the particular facts and circumstances of each case, and is not enforced as a matter of legal right, but in order to subserve the ends of justice in the particular controversy under consideration.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Murray County; T. P. Clay, Judge.

Action by American Surety Company and others, against W. H. Richardson for debt and lien. Judgment for plaintiffs, and defendant brings error. Affirmed.

W. N. Lewis, for plaintiff in error.

Young, Haste & Powell, for defendants in error.

Opinion by THOMPSON, C. This action originated in the district court of Murray county, Okla., on the 14th day of February. 1916, by the American Surety Company, a corporation, defendant in error. plaintiff below, filing its petition against W. H. Richardson, plaintiff in error, defendant below, and by amended petition, filed July 16, 1918, in which Charles C. Caldwell and Estell Caldwell were made parties plaintiff, asking for a decree declaring a trust in certain town property in Davis, Okla., and for rents and profits, and for lien on said property for amount due from Richardson to the Caldwells and from Caldwells to it.

The parties will be referred to as plaintiffs and defendant as they appeared in the lower court.

The issues in the case are, in substance, as follows: That Charles C. Caldwell was cashier of the Oklahoma State Bank of Davis, Okla.; that the American Surety Company was surety on his bond in the sum of $5,000; that Caldwell abstracted and misappropriated the funds of said bank in the sum of $3,550, and that the American Surety Company, as surety on said bond, paid the bank the amount of the defalcation: that plaintiffs Charles C. Cladwell and Estell Caldwell owned lots three and four in block 129 and the improvements thereon, in the town of Davis, Okla., which was mortgaged to the Midland Savings & Loan Company of Denver, Colo., for the sum of $1,200; that on September 17, 1914, the defendant, W. H. Richardson, obtained a deed from the Caldwells, paying $150 in cash and assuming certain indebtedness; that Richardson refused to pay certain of the said indebtedness; that Charles C. Caldwell was insolvent, and that this property was the only property owned

by him; that on November 21, 1914, the Caldwells made a deed to the American Surety Company for the purpose of partially reimbursing it for the amount it had paid to the bank, and conveyed to it their equitable interest in said lots.

The defendant filed answer and cross-petition, denying that he assumed certain items of the indebtedness, as alleged in plaintiffs' petition, and claimed title to the property under the deed executed September 17, 1914, by the Caldwells, and that he paid as a consideration therefor the following items: $1,000, $303, and $50, evidenced by notes drawn in his favor by Charles C. Caldwell, which he cancelled; that he assumed indebtedness of $92.45, due the Baughman Lumber Company on note; $146.47, due R. L. Freeman by Charles C. Caldwell, which he paid; and that he assumed balance due the Midland Saving & Loan Company on the mortgage on the lots and premises; and that he paid $150 in cash on the date of the deed, which amounts to the total sum of $2,500, being the full consideration named in the deed, and by cross-petition claimed the deed to the American Surety Company was void for the reason that at the time of the execution of said deed that he was the owner of the record title and was in possession of the premises; that the Caldwells as plaintiffs were barred from asserting any right, title, or interest in and to said property by the statute of limitation.

The plaintiffs filed reply to cross-petition, which in effect was a general denial.

Trial was had to the court, which resulted in a decree upholding the deed executed by the Caldwells to Richardson; that the consideration for said deed was $2,500, which defendant agreed to pay the grantors less the amount paid to grantors and less the sums agreed to be paid; that defendant had paid to the Caldwells and on account of the debts assumed by him, the sum of $741.82, and that he had paid about the sum of $500 upon the Midland Savings & Loan Company mortgage, and that there was still due of the purchase price the sum of $1,000. and that the statute of limitation had not run against the claim for the purchase price, and from the evidence and the deed executed by the Caldwells to the American Surety Company, found that it was the intention and purpose of the Caldwells to transfer and convey unto the American Surety Company whatever interest or right they had in the balance of the purchase price, owed by defendant to them, and that said Surety Company should be subrogated to the rights of the Caldwells therein and to re-

cover the amount remaining due thereon and canceled the deed from the Caldwells to the American Surety Company of November 21, 1914, and vested the title in W. H. Richardson, under his deed, and pronounced judgment in favor of the American Surety Company against the defendant in the sum of $1,000, balance of purchase price of said premises, by virtue of its right of subrogation, as aforesaid, and declared a lien upon the property for the payment of the same, subject only to the lien of the Midland Savings & Loan Company mortgage.

A motion for new trial was filed and overruled and exceptions reserved. The cause comes regularly on appeal to this court by defendant from said judgment.

The defendant assigns the following errors:

"(1)  That the judgment and decree of the court is not sustained by the evidence.

"(2)  That the judgment and decree of the court is not sustained by the law, for the reasons:

"(a)  That the premises in question was the homestead of the Caldwells. and the American Surety  Co. being  a creditor of Charles C. Caldwell can not question or inquire into the consideration for said premises;

"(b)  That an implied lien cannot be assigned or transferred, same being a personal matter;

"(c)  That a deed from a grantor having a lien for purchase price does not convey this lien along with the title to the land, unless the debt is assigned.

"(3)  That the judgment and decree of the court is contrary to law in this: That the court was without authority or power, under the law, to decree a lien upon said premises in favor of the plaintiff, American Surety Company, or any other person whatever, for the reason that the limitations fixed by law had run against any claim for balance of the purchase money against Charles C. Caldwell and all others claiming through him."

This is an action of purely equitable cognizance, and was tried to the court without the intervention of a jury. and must be decided upon the broad, established principles of equity, and if the finding of the court is not clearly against the weight of the evidence, and comes within the principles of equity, the decision of the lower court should be and must be affirmed, otherwise, it should be reversed.

The uncontroverted facts in this case are that Charles C. Caldwell and his wife owned the lots and improvements thereon as their homestead; that the same was mortgaged to the Midland Savings & Loan Company for $1,200, upon which payments had been made by them at the rate of $26 per month for over three years, or in the total sum of over $936, which included partial payments on principal, together with all interest; that Charles C. Caldwell was cashier of the Oklahoma State Bank of Davis, Okla.; that he had misappropriated the funds of the bank in the sum of $3,550, and that the American Surety Company, as surety on his bond, had paid the amount in full of his misappropriation; that prior to the payment by said Surety Company the Caldwells had sold the lots and improvements in question to defendant, W. H. Richardson, for an agreed price of $2,500, upon which he had paid in cash and given credit on notes due to him and on a note and account assumed by him, the total sum of $741.82; that he assumed the mortgage to the Midland Savings & Loan Company and had paid thereon about $500, and that the Caldwells at about the time the company paid the shortage for the cashier, in order to repay it, as far as they could, made a deed to said company of the same property theretofore deeded to W. H. Richardson, this being the only property they had, and such deed was given for the sole and only purpose of reimbursing the surety company for the money it had paid out upon the cashier's shortage to the bank.

The disputed facts are that the Caldwells claim that as part of the consideration to be paid for the deed to Richardson he was to assume a debt of $600 to a Mrs. Barnette, which he had failed to pay, but which the surety company had paid to the bank, as the bank claimed liability for this debt, as part of the shortage of $3,550 and another item that Richardson claimed of $1,000 due him by Charles C. Caldwell, upon a promissory note, which he claimed had been executed and delivered to him by Caldwell, which he claimed he had lost. The execution of this note was denied by Caldwell and the evidence of Richardson was very unsatisfactory, as appears in the record, in regard to this note, and the officers of the bank testified that the note ledger of the bank would show such a note if any such note had ever existed, and where such convincing proof was available to Richardson, the town of Davis being but a short distance from the scene of the trial, where he could have procured this record and he did not do it, the presumption arises that no such record existed or he would have presented it in evidence in this cause, and the court properly found against his contention that the Caldwells owed him this $1,000 note. Then, we are for-

ced to conclude that the findings of the court, upon this state of the evidence, that he had purchased this property for the sum of $2,500, and had only paid and been credited with payment the sum of about $1,241.82, and that he still owed a balance of $1,000 on the purchase price is a fair conclusion from the evidence, as under this finding it leaves a margin of $258.18 between the amount paid and the amount agreed to be paid in addition to the $1,000 that the court found still due. We are, therfore, of the opinion, measured by the rule that has been established by this court, that the findings of the court are not against the clear weight of the evidence and will not be disturbed, unless the judgment is clearly against the weight of the evidence, which disposes of the first proposition argued by counsel for defendant. Upon the first subdivision of the second proposition that 'the premises in question was the homestead of the Caldwells and the American Surety ·Company, being a creditor of Charles C. Caldwell, cannot question or inquire into the consideration for said premises, in our opinion, under the facts and circumstances of this case, is not tenable, although it is admitted that the property was the homestead of the Caldwells. And we do not think it necessary, in our view of this case, to pass upon the second subdivision that the implied vendor's lien cannot be assigned or transferred, the same being ·a personal matter. This matter never has been passed upon by this court and we do not deem it necessary to pass upon it in this case for the reasons hereinafter appearing in this opinion, nor do we think that the contention under the third subdivision that a deed from a grantor, having a lien for purchase price, does not convey this lien along with the title to the land, unless the debt is assigned, is of any particular consequence in this case for reasons hereinafter set forth in this opinion.

As stated in the outset of this opinion, this is purely a' case of equitable cognizance. The court had all of the parties before it, had full jurisdiction of the parties and the subject-matter, and having properly found that the defendant owed the Caldwells $1,000 upon the purchase price of the property, and that Charles C. Caldwell was indebted to his surety in the sum of $3,550 for money paid on his account because of his shortage to the bank, a part of which included a' debt claimed to have been assumed by the defendant as part of the consideration of the purchase price for the property, the court, in the exercise of its equity power, ordered the defendant to pay this sum of $1,000 to the surety company, which was the coplaintiff of the Caldwells, and by right of sub-

rogation said payment to be made to the surety company instead of to the Caldwells, and declared the same a lien upon the property, and in the same order protected the rights of the defendant by making it subject to the payment of any balance that might be due the Midland Savings & Loan Company mortgage. It is immaterial, in our opinion, as to whether the defendant, W. H. Richardson, should pay this money as a balance due on the property to the Caldwells or to the surety company as long as he is discharged from further obligation therefor, and the Caldwells, in their testimony, both testified that it was their intention to convey this property, or whatever interest they had therein, to the surety company to reimburse it as far as they were able for the money paid out on their account, and as $600 on the purchase price agreed to be assumed by W. H. Richardson was paid out by the surety company instead of by Richardson, it is our opinion that this right to subrogation existed independently of the contentions of attorney for defendant.

The doctrine of subrogation is not a fixed and inflexible rule of law or equity. It does not owe its origin to statute or custom. It is a creature of courts of equity, invented and applied by them to do justice in a particular case, and under a particular state of facts, where the law is powerless in the premises. Arlington State Bank v. Paulson, 57 Neb. 717, 78 N. W. 303. See, too, Acer v. Hotchkiss, 97 N. Y. 395; Pease v. Egan, 131 N. Y. 262, 30 N. E. 102. It does not depend upon privity or contract; nor is it limited in its application to sureties and quasi-sureties. But it is the mode whereby equity compels the ultimate discharge of an obligation by him who ought to pay it; and it is broad enough to include every instance in which one person, who, not being a mere volunteer, pays a debt, which, in justice, equity and good conscience, ought to be paid by another. Davis v. Schlemmer, 150 Ind. 472; Boston Safe Deposit, etc., Co. v. Thomas, 59 Kan. 470, 53 Pac. 472; Flannery v. Utley, 9 Ky. Law Rep. 581; Stewart v. Parcher (Minn.) 98 N. W. 650; Arnold v. Green, 116 N. Y. 566; Durante v. Eaunaco, 72 N. Y. Supp. 1048; Bender v. George, 92 Pa. St. 36; Miller's Appeal, 119 Pa. St. 620; Nalle v. Farrish, 98 Va. 130.

The above principles find support in the above cited authorities, collected in a footnote following the decision in the case of American Bonding Co. of Baltimore v. National Mechanics' Bank of Baltimore, 99 Am. St. Rep. 476 and 477.

The principle to be derived from the doctrine of subrogation is that it is born of

equity and results from the natural justice of placing the burden where it ought to rest. It does not flow from any fixed rule of law, but rather from principles of justice, equity, and benevolence. It is a purely equitable result, depending like other equitable doctrines upon the facts and circumstances of each particular case to call it forth. It is a device adopted or invented by equity to compel the ultimate discharge of a debt or obligation by him who in good conscience ought to pay it. Opp v. Ward, 125 Ind. 241; Crippen v. Chappel, 35 Kan. 499; Emmert v. Thompson, 49 Minn. 386; Ocobock v. Baker, 52 Neb. 447; Boice v. Conover, 63 N. J. Eq. 273: Kolb v. National Surety Co., 176 N. Y. 233; Cottrell's Estate, 23 Pa. St. 294: Memphis, etc., R. R. v. Dow, 120 U. S. 287.

No doctrine of equity jurisprudence is more beneficient in its operation than is subrogation, and perhaps none stands in higher favor. Chaplin v. Sullivan, 128 Ind. 50; Sands v. Durham, 99 Va. 263. No general rule can be laid down which will afford a test in all cases for its application, and its exercise depends upon the particular facts and circumstances of each case, and is not enforced as a matter of legal right, but in order to subserve the ends of justice in the particular controversy under consideration. Boston Safe-Deposit Co. v. Thomas, 59 Kan. 470; In re Mosier, 56 Pac. St. 76.

We can conceive of no case where the facts more clearly justify the application of this beneficent doctrine than the facts do in the instant case. Richardson owes the debt to the Caldwells; the Caldwells owe more than three times this amount to the surety company; the Caldwells have attempted to reimburse the surety company in so far as they are able out of this very property. The court permits Richardson to retain the property, protects him as against the mortgagee, but says to him you must pay the balance of the purchase price of this property, which you justly owe, to the surety company, and gives the surety company the same right to enforce the payment of the balance of this purchase price as that held by the Caldwells by declaring a vendor's lien upon the property. No one can complain of this just and fair settlement of this controversy except the Caldwells and they do not appeal, and it is our opinion that the decision of the court in this case upon these propositions was fully justified, and sitting as a high court of conscience he had the authority, power, and jurisdiction to compel this settlement as he did.

The third and last proposition urged by counsel for defendant is that the right of the Caldwells is barred by the statute of limitation. In our opinion subdivision three of the statute of limitation, relied upon by counsel, does not apply to a case of this character.

We are, therefore, of the opinion that the judgment of the lower court was right and the same should be, and is hereby affirmed.

By the Court: It is so ordered.