## MITCHELL et al. v. JACKSON et al.

No. 23882.　March 3, 1936.

Rehearing Denied May 19, 1936.

Application for Leave to File Second Petition for Rehearing Denied Sept. 15, 1936.

M. C. Spradling and Davidson & Williams, for plaintiffs in error.

Yancey, Spillers & Fist, for defendants in error.

PER CURIAM. This is an appeal from the judgment of the district court of Tulsa county in favor of the defendants in error and against the plaintiffs in error. In this opinion the parties will be referred to as they appeared below.

This case arose from the following state of facts: C. L. Reeder, a physician of Tulsa, Okla., had, during his lifetime, become heavily indebted. Amongst his creditors were the plaintiffs, all of whom appeared as plaintiffs except the Security Trust Company, which appeared as intervener. Plaintiffs obtained a judgment against Reeder during his lifetime for $1,436.36, of which $1,372.07 remained unpaid when this action was filed, and both plaintiffs and intervener had actions pending against him at the time of his death, December 20, 1926. Both actions were revived, and judgments obtained against his administratrix in excess of $30,000. Reeder left surviving him, his widow, Jessica V. Reeder, and their married daughter, Winifred K. Jackson.

For several years prior to his death, Dr. Reeder kept the naked legal title to the real estate here in controversy in the name, first, of Roy E. Lynch, then, B. H. Greenwood, and immediately prior to his death,

in the name of his private secretary, Ruth E. Carpenter. The property was mortgaged by Ruth E. Carpenter to the Tulsa Building & Loan Association for $10,000, which sum she paid to C. L. Reeder during his lifetime. After Dr. Reeder's death, Ruth E. Carpenter deeded the property to Winifred K. Jackson subject to the above mortgage, which Mrs. Jackson assumed and agreed to pay.

Jessica V. Reeder was appointed administratrix of the C. L. Reeder estate by the county court of Tulsa county. Plaintiffs requested her to bring an action against her daughter, Winifred K. Jackson, to recover said property as an asset of the estate of C. L. Reeder. She refused to do this. Plaintiffs then commenced the action out of which this appeal arose against Winifred K. Jackson, Jessica V. Reeder, and Jessica V. Reeder, administratrix of the estate of C. L. Reeder, deceased, to cancel the deed to Mrs. Jackson and for an accounting of the rents and profits. The intervener, the Security Trust Company, a corporation, was given leave to intervene and did so, asking the same relief as prayed for by plaintiffs. Jessica V. Reeder joined Winifred K. Jackson in a motion to separately state and number and one to make more definite and certain. Beyond these she filed no further pleadings either as an individual or as administratrix. Winifred K. Jackson, however, filed a separate answer and cross-petition and amended answer and cross-petition, in the former of which, after denying allegations of plaintiffs and intervener, she alleged that she bought the land in April, 1927, for $10,000 cash paid, took immediate possession, and still had possession, and prayed that her title be quieted against plaintiffs and intervener. In the latter she made the same allegations except that she had promised to pay $15,000 for the land. In count 2 of this pleading, she made the same allegations as above, except that she alleged the consideration to be assumption and agreement to pay the $10,000 mortgage upon the land. In this connection, she alleged that she had paid part of the mortgage and certain sums for insurance, repairs and taxes upon the property. She prayed that she might be subrogated to the rights of the mortgagee, the Tulsa Building & Loan Association, to the extent of the amount she had paid out thereon' over and above the amount collected as income from said real estate. Plaintiffs and intervener, in their respective answers to the amended cross-petition, charged that Winifred K. Jackson took the deed from Ruth E. Carpenter and entered into possession with full knowledge and notice that same belonged to the estate of C. L. Reeder, deceased, and that Ruth E. Carpenter held the title to said real estate for the use and benefit of the estate of C. L. Reeder, and that she had no beneficial interest therein, but was merely a trustee thereof for the use and benefit of C. L. Reeder, and that Winifred K. Jackson took said deed and possession fraudulently and for the unlawful purpose of concealing the assets of the estate and putting them beyond the reach of creditors of the said estate. They further alleged that Mrs. Jackson and Mrs. Reeder conspired together for the above purposes; that Mrs. Jackson did not take the deed and enter into possession in good faith, but in bad faith; that such conduct estopped her from claiming credit for any sums paid out by her upon the mortgage or for other purposes.

To these answers, Winifred K. Jackson filed replies in the nature of general denials, and upon the issues thus joined the action went to trial, which resulted in a judgment that said real estate was held in trust by Winifred K. Jackson for the use and benefit of the estate of C. L. Reeder, deceased, and, further, that Winifred K. Jackson be subrogated to all the rights of the Tulsa Building & Loan Association, the first mortgagee, as against said real estate to secure the payment of $4,736.43, with interest at 6 per cent. from August 15, 1931, the amount paid on the $10,000 mortgage after deducting all proper credits, and that same be decreed a lien on said real estate of equal rank with that of the Tulsa Building & Loan Association.

To reverse that part of the judgment in favor of the defendant, Winifred K. Jackson, the plaintiffs and intervener prosecute this appeal. No appeal was taken by the defendant to that part of the judgment adverse to her.

Plaintiffs allege several errors, but sum them all up in the following proposition: "Subrogation will not be applied to relieve one of his own wrongful acts." They then say in their brief:

"The first thing for us to determine is, were the acts of the defendant wrongful? This will necessitate an examination of the pleadings filed upon behalf of the defendant Jackson as well as the evidence introduced. As we proceed to our task, we are not unmindful of the rule of this court so often pronounced regarding equity cases. to wit: 'Trial courts' judgment on questions of fact in equity cases will not be dis-

turbed unless against clear weight of evidence.' "

The language of plaintiffs clearly states the problem of law in this case. A brief summary of the pleadings has been given above, hence, we come now to a brief resume of the evidence:

Ruth E. Carpenter testified (C.-M. 86) that she was secretary and bookkeeper for Dr. Reeder during his lifetime; that in July, 1927, the property was deeded to her by B. H. Greenwood, and that she held same as security for salary owed her by Dr. Reeder; that she placed the $10,000 mortgage on the property at Dr. Reeder's request, and that he received the money; that she made payments on the mortgage out of the income from the property and money given her for the purpose by Dr. Reeder; that she and her husband deeded the property to Winifred K. Jackson; that Mrs. Jackson gave no consideration to her or her husband therefor.

A. B. Crews, assistant secretary of the Tulsa Building & Loan Association, testified (C.-M. 140) that there was $5,244.57 due on the mortgage executed in January, 1926, by Ruth E. Carpenter, and that the last payment was made in June, 1931; that the payments were $133.33 per month; that the mortgage was assumed by Mrs. Jackson September 19, 1927; that at the time there was due upon the mortgage $9,287.37; that from the date of the assumption of the mortgage by Winifred K. Jackson to the present time (Sept., 1931), there had been paid upon said mortgage $3,466 principal and $3,068.20 interest; that Mrs. Jackson made several payments on the loan and paid the taxes; that many payments were made by Mrs. Reeder by checks; that several payments were made by tenants occupying the property.

Roy Lynch, deputy county treasurer, testified that the taxes for 1926, 1927, 1928, were paid by Jessica V. Reeder.

The gist of Jessica V. Reeder's testimony is: That the C. L. Reeder estate was insolvent; that she heard Dr. Reeder say during his lifetime that he wanted Mrs. Jackson to have the property for a debt he owed her husband; that she considered the property that of Mrs. Jackson; that she refused to sue Mrs. Jackson to bring the property into the estate; that all the payments made by her upon the mortgage, taxes, etc., were with Mrs. Jackson's money and for her use and benefit.

Winifred K. Jackson testified in her own behalf as follows: That her deceased husband was a major in the United States Army and died August 22, 1927; that during his lifetime he loaned money to her father, Dr. Reeder, to the sum of about $4,000; that in November, 1924, her father told her that he intended to deed her the property in question in consideration of his debt to her husband; that Dr. Reeder also made this statement to her husband; that he made a deed to her in November, 1925, but that she did not get the deed for the reason that she was unable to come to Tulsa at that time and help Dr. Reeder get a mortgage on the property because her husband was ill and had to be removed to Denver, Colo., and that it was necessary for her to stay with him continually after that time, and that in order to help Dr. Reeder get the loan, he later had the property transferred to a Mrs. Carpenter; (the deed from Greenwood to Ruth E. Carpenter was introduced in evidence and disclosed that the name of the grantee had been erased and that of Ruth E. Carpenter written over the erasure); that Mrs. Carpenter deeded her the property in 1927 when she was in Denver, Colo.; that after the deed was made to her she asked her mother to look after the property for her; that she had her mother make payments to the Tulsa Building & Loan Association; that the payments were made with her money; that she paid the taxes, building and loan payments, penalties, insurance and repairs on the property in the sum of $9,669.43; that during this time she collected $5,033 as rent on the property, and that the difference between the amount she paid out and the amount she collected was $4,636.43; that after her father's death she was the only one who had money with which to pay off the mortgage; that she was the only child of Dr. Reeder; that she gave her mother money to make the payments and that her mother would deposit the money in her own name and write checks in payment on the mortgage, taxes, etc.; that when she took over the property and at no time since has she ever intended to defraud the creditors of the Reeder estate; that at the time she took over the property there were no judgments against the Reeder estate, and that it was not insolvent at that time; that she quit paying on the mortgage upon the advice of counsel after the present action was filed. On cross-examination she stated that upon the death of her husband she received $20,000 insurance, $3,000 for six months'

salary of her husband, and a monthly allowance of $36 for herself and child from the government; that after her father's death her mother received an allowance from the estate of $200 per month for one year; that for several years after her father's death she managed the Reeder Hotel at a salary of $200 per month; that she had her mother make payments on the mortgage because being busy with her work at the hotel it was inconvenient for her to make the payments in person; that there were no claims against her husband's estate except funeral expenses; that she took the property and attempted to pay the mortgage believing the property belonged to her.

B. H. Greenwood testified by deposition that the property in question was deeded to him as security for a debt which Dr. Reeder owed him; that on November 11, 1925, he executed a deed on the property to Ruth Ellen Carpenter, but that prior to said date he had been instructed by Dr. Reeder to deed the property to Mrs. Jackson, and that he made the deed to her as grantee, but that after making the same he received another communication from Dr. Reeder requesting that he change the name of the grantee to Ruth Ellen Carpenter; that he was unable to find the letter from Dr. Reeder, but in the letter Dr. Reeder told him that Mrs. Jackson was in Colorado and he wanted the deed placed in the name of another party; that after he made the deed to Mrs. Carpenter he received $1,800 upon the $2,250 which Dr. Reeder owed him; that he did not know Winifred K. Jackson; that Dr. Reeder wanted the deed changed from Mrs. Jackson to Mrs. Carpenter to enable him to get a loan on the property and pay the witness, Greenwood.

Plaintiffs introduced in evidence photostatic copies of the bank deposit slips and ledger sheets of Mrs. Reeder and the checks given by her upon the mortgage. These showed that a great majority of the payments on the mortgage and also payment of taxes were made with checks upon Mrs. Reeder's bank account. They also introduced correspondence from Mrs. Reeder to the Tulsa Building & Loan Association in which she referred to the mortgage as "my" loan, and "my" account. This evidence tends strongly toward showing that Mrs. Reeder used some of her own and some of the estate funds to pay upon the mortgage. Upon this evidence the trial court made the following finding of fact (C.-M. 348):

"That the real estate (describing it) was the property of C. L. Reeder at the time of his death, and was then held in trust for his use and benefit, subject to an outstanding mortgage in favor of the Tulsa Building & Loan Association, and that the same is now held by the defendant, Winifred K. Jackson, as trustee, for the use and benefit of the said estate."

"The court further finds all the issues in favor of Winifred K. Jackson, and against the plaintiffs, intervener and codefendants, on her cross-petition, except as to the issue of the title to the above-described real estate; the court further finds that Winifred K. Jackson, the defendant and cross-petitioner, in good faith and believing that she was the owner, * * * made the following payments on the first mortgage covering the above-described property and held by the Tulsa Building & Loan Association, Tulsa, Okla., to wit: $7,192.80, and reduced said mortgage by the said amount; that she paid taxes against the above-described real estate for the years of 1926, 1927, 1928, 1929, and the first one-half of 1930, in the sum of $2,189.27; that she paid insurance to protect said property and the said first mortgagee, Tulsa Building & Loan Association, in the sum of $118.70; that she made necessary repairs in the sum of $98.66 on the houses located on the above-described real estate, which inure to the benefit of the Reeder estate; that she paid certain penalties to the Tulsa Building & Loan Association in the sum of $70, making an aggregate sum of money paid out by the defendant and cross-petitioner, Winifred K. Jackson, for the use and benefit of the first mortgagee, Tulsa Building & Loan Association, and the estate of C. L. Reeder, deceased, in the sum of $9,769.43; that during the period in which the cross-petitioner, Winifred K. Jackson, had possession of the said premises, through her personal efforts, she procured tenants, looked after the renting of the said property and collected the reasonable rental thereon in the sum of $5,033; that the said defendant and cross-petitioner is entitled to a credit in the sum of $9,769.43, and that she should be charged with the rents collected in the sum of $5,033, leaving a balance due and owing said cross-petitioner, Winifred K. Jackson, in the sum of $4,736.43, which said sum became due August 15, 1931, and should bear interest at the rate of 6 per cent. (6%) per annum until fully paid and satisfied, to which plaintiffs and intervener except."

"The court further finds that all of the said payments made by the cross-petitioner, Winifred K. Jackson, inured to the benefit of the estate of C. L. Reeder, deceased, and the first mortgagee, Tulsa Building & Loan Association, and that the said Winifred K. Jackson should be subrogated to the rights of the first mortgagee in the sum of $4,736.43, with interest thereon at the rate

of 6 per cent. (6%) per annum from August 15, 1931, and costs, to which plaintiffs and intervener except."

The trial court then made a formal order establishing the rights of the parties in accordance with the above finding of facts. Plaintiffs cite numerous cases supporting the proposition that one who is guilty of bad faith is not entitled to subrogation (Akers v. Lord [Wash.] 121 P. 51).

If it be decided that Winifred K. Jackson was a purchaser in bad faith, then plaintiffs' contention and authorities are decisive. Until, however, this court is able to say that the finding of the trial court that she made these payments in good faith is against the clear weight of the evidence, the cases to the effect that one guilty of bad faith is not entitled to the benefit of the principle of subrogation have no application here.

In Richardson v. American Surety Co., 97 Okla. 264, 223 P. 389, the court said:

"Where in an action of purely equitable cognizance tried to the court without the intervention of a jury, the finding of the court is not clearly against the weight of the evidence and comes within the principles of equity, the decision of the lower court should be and must be affirmed."

The above principle is so well established in this state that it is not deemed necessary to cite further cases applying it.

Plaintiffs alleged and sought to prove that Winifred K. Jackson was a fraudulent vendee of the land. The trial court found that she was not a fraudulent vendee. We think this finding is warranted in view of the evidence, and the degree of proof required to establish fraud in an equity case. In this connection we think the syllabus in Ely Walker Dry Goods Co. v. Smith, 69 Okla. 261, 160 P. 898, is applicable, wherein the court said:

"Fraud, though in equity it may be inferred from circumstances, must be shown and brought home to the opposite party by clear and convincing proof."

In view of these well-settled principles, and upon consideration of all the evidence, we think this court would not be warranted in disturbing the finding of fact made by the trial court. Having come to this conclusion, there remains only consideration of the correctness of the court's order subrogating the defendant Winifred K. Jackson to the rights of the first mortgagee, the Tulsa Building & Loan Association.

There appears to be no Oklahoma case directly in point on this question. The questions involved are purely equitable, hence, we must apply equitable principles to arrive at the correct solution. In Richardson v. American Surety Co., 97 Okla. 264, 223 P. 389, cited above, the court said:

"The principle to be derived from the doctrine of subrogation is that it is born of equity and results from the natural justice of placing the burden where it ought to rest. It does not flow from any fixed rule of law, but rather from principles of justice, equity, and benevolence. It is a purely equitable result, depending like other equitable doctrines upon the facts and circumstances of each particular case to call it forth. It is a device adopted or invented by equity to compel the ultimate discharge of a debt or obligation by him who in good conscience ought to pay it."

In the same case the court further said:

"No doctrine of equity jurisprudence is more beneficent in its operation than is subrogation, and perhaps none stands in higher favor. No general rule can be laid down which will afford a test in all cases for its application, and its exercise depends upon the particular facts and circumstances of each case, and is not enforced as a matter of legal right, but in order to subserve the ends of justice in the particular controversy under consideration."

Jones on Mortgages, sec. 1114, states the principle as follows:

"One who has paid a debt under colorable obligation to do so, in order that he may protect his own interest, or under an honest belief that he is bound, is entitled to be subrogated, and where one pays a debt in good faith believing that he has an interest to protect, he will be subrogated though he be mistaken in such belief."

In 37 Cyc. 444, is found the following pertinent statement of the rule:

"Where a person in good faith assumes and pays an incumbrance on land to which he has no title, but believes in good faith that he is the owner, he becomes the equitable owner of the incumbrance, and the same constitutes a lien upon the land."

The above principle is universally followed and might be supported by innumerable authorities, the elaboration of which would be merely cumulative.

Extending the benefit of the principle of subrogation to Winifred K. Jackson does not permit her to make a profit, but simply reimburses her for the actual money spent by her upon this property. We think the trial court was correct in extending to her the benefit of the equitable principle of

subrogation, and that the judgment rendered herein should be and is hereby in all things affirmed.

The Supreme Court acknowledges the aid of Attorneys Dave Bucher, E. S. Champlin, and Frank Carter in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Bucher and approved by Mr. Champlin and Mr. Carter, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BUSBY, PHELPS, and CORN, JJ., concur.