SMITH et al. v. MINTER et al.

No. 32324.    March 25, 1947.

Rehearing Denied Feb. 12, 1948.
Second Petition for Rehearing
Denied April 20, 1948.

*191 P. 2d 929.*

William M. Franklin, of Oklahoma City, and Randell S. Cobb, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for plaintiffs in error.

James E. Grigsby, of Oklahoma City, for defendants in error.

OSBORN, J. This action was brought by Jack H. Smith, special administrator of the estate of Alice Jane Knight, deceased, and the State of Oklahoma ex rel. Oklahoma Public Welfare Commission, as plaintiffs, against the defendants, Robert L. Knight, Joe Isbell, Sara E. Minter and Joseph O. Minter, Jr., upon a claim of the Oklahoma Public Welfare Commission against the estate of Alice Jane Knight, deceased. The defendant Robert L. Knight was formerly administrator of the estate of Alice Jane Knight, deceased. Joe Isbell was one of the sureties upon his administrator's bond, and Sara E. Minter and Joseph O. Minter, Jr., were the sole heirs and distributees of J. O. Minter, deceased, who was also a bondsman upon the administrator's bond of Robert L. Knight. The trial court rendered judgment in favor of the plaintiffs as against Robert L. Knight and Joe Isbell, but denied recovery as to the defendants Sara E. Minter and Joseph O. Minter, Jr., holding that property distributed to and held by them had never been the property of J. O. Minter, deceased, and was not subject to or liable for the claim of plaintiffs. From that part of the judgment denying them the right to enforce payment of their claim against such property in the hands of the defendants Sara E. Minter and Joseph O. Minter, Jr., plaintiffs appeal. Sara E. Minter and Joseph O. Minter, Jr., will hereinafter be referred to as defendants.

The trial court found, and defendants here concede, that the claim of the plaintiffs as against the estate of J. O. Minter, deceased, was established, and that under the rule announced by this court in Chitty v. Gillett, 46 Okla. 724, 148 P. 1048, the property of the estate of J. O. Minter in the hands of his heirs could be subjected to the payment of such claim.

The decisive question presented, therefore, is whether, under the evidence produced at the trial, the trial court erred in holding that a one-half interest in certain land was not the property of J. O. Minter at the time of his death, and that he had no interest therein.

From the evidence it appears that during his lifetime J. O. Minter and B. E. Adamson, a banker in the city of Madill, acquired title to 320 acres of land in Marshall county, under some arrangement whereby Adamson furnished the money and Minter his efforts or work in acquiring full title to the property. Title to the property was taken in the name of Minter. On February 14, 1942, by written contract executed between Adamson and Minter, it was agreed that Minter held legal title to the property; that he was acquiring additional title thereto by virtue of certain pending court proceedings, and that the title so held by him and such title as might thereafter be acquired to said lands would be held by Minter for himself as to an undivided one-half interest, and in trust for Adamson as to an undivided one-half interest; that all rents accruing from the land and moneys in the hands of a receiver in the pending court proceeding were to be paid over to Adamson and deducted from the total amount he had invested in the property, and that then and in that

event Minter would owe Adamson one-half of the remainder of Adamson's investment in the property; that at that time, that is, when the net amount invested by Adamson could be definitely determined, Minter would either pay one-half of that amount in cash or would give a note and mortgage on his undivided one-half interest in the property, with interest at the rate of 5 per cent per annum from date until paid, and that until that time Adamson should have a lien upon Minter's interest in the real estate to secure him. It also provided that Minter would convey Adamson's one-half interest at any time Adamson requested him to do so.

On the same date Minter borrowed from his father-in-law, W. L. Raborn, $850 which he paid to Adamson upon the purchase price of Minter's one-half interest in the property, and by letter to Raborn gave him a lien upon his interest in the property to secure said $850 with interest at the rate of 5 per cent per annum until paid, and agreed that if Raborn requested he would execute a mortgage to secure payment of said $850, subject to any mortgage made by him to Adamson.

Thereafter, on April 6, 1942, by a judgment rendered in said legal proceedings in Marshall county, Minter was adjudged to be the legal owner of said property and title was quieted and confirmed in him as against the other parties to said action, but the funds in the hands of the receiver in that case were ordered retained by the receiver until the further order of the court. Neither Adamson nor Raborn were parties to that action, and it appears reasonably certain that said action was the "pending court proceeding" referred to in the contract between Minter and Adamson. Adamson admitted the payment to him by Minter of the sum of $850, being the sum borrowed by Minter from Raborn, and Adamson further testified that his investment in the property was approximately $6,000. What amount, if any, Adamson received

from the rent of the property, and what amount, if any, was paid to him by the receiver in the case above mentioned in which Minter was decreed to be the owner of the legal title to the land in question, is not shown in the record. Minter died on June 20, 1942, leaving as his sole assets his interest in the property in controversy here, and his homestead, which was exempt from the payment of his debts. He also left an insurance policy in favor of his wife. His estate was duly probated, the lands in controversy being listed as a part of his estate and distributed to defendants as his sole surviving heirs. The order of distribution was made on July 9, 1945. It further appears that on August 26, 1942, Sara E. Minter, using the money received from the life insurance policy above referred to and money given her by her father, Raborn, paid off the balance due against the one-half interest of her husband in said land, and purchased the one-half interest belonging to Adamson, receiving a quitclaim deed from Adamson and wife, conveying the entire property to her and Joseph O. Minter, Jr. It also appears that she paid out of the proceeds of said insurance policy the expenses of her husband's last illness, his funeral expenses, and the costs and attorneys fees in the administration proceeding, amounting in all of some $923. This was apparently done to avoid selling any interest which Minter might have in the land above referred to for the payment of such expenses, and she did not make any claim against the estate for repayment of such sums.

The claim of the plaintiffs against the estate of Alice Jane Knight, deceased, was not finally established as a valid claim until after the closing of the estate of J. O. Minter, deceased. In the inventory and appraisement of the estate of J. O. Minter, deceased, the land was valued at $8,000, and at the trial of this case one of the appraisers, who was the sole witness as to the value, testified that it was worth that amount at that time.

The trial court found and held that title to the 320 acres of land in controversy was in fact acquired by the defendants after the death of J. O. Minter, and that at the time of the death of J. O. Minter he had no interest in said land which could be subjected to the lien of plaintiffs' claim. We think that in so finding and holding the trial court erred.

The contract between Minter and Adamson contains no language indicating that the parties intended that title to the property was to be held by Minter in trust for Adamson, and that Minter had no interest therein until title was perfected in him and he had paid his proportionate part of the money expended by Adamson in procuring the title. It shows that the parties both considered and agreed that each had an undivided one-half interest in the property at the time the contract was entered into; that the after-acquired title, as and when Minter acquired it, was to be held by Minter for himself as to one-half of the land and in trust for Adamson as to the other one-half interest. The agreement clearly discloses that the only trust relationship between Minter and Adamson was as to Adamson's one-half interest, and that the other one-half interest was owned by Minter subject to the payment of one-half of the money furnished by Adamson after the deductions above referred to had been made. There was no express trust agreement, and no intent shown that the title should be held for Adamson. Such intent, in the absence of an agreement, was necessary to establish a resulting trust. J. I. Case Threshing Machine Co. v. Walton Trust Co., 39 Okla. 748, 136 P. 769; Flesner v. Cooper, 39 Okla. 133, 134 P. 379; McCoy v. McCoy, 30 Okla. 379, 121 P. 176. The contract definitely and unequivocally recognizes the interest of Minter as being fully vested in him, both as to the legal and equitable title, subject to a lien in favor of Adamson for Minter's proportionate part of the balance due Adamson after the rents and money in the hands of the receiver had been deducted therefrom. Apparently Minter died before this final accounting was had, and there is no evidence in the record from which the court could determine what was due from Minter to Adamson for his one-half interest. Adamson's testimony that he had some $6,000 invested in the land did not disclose whether this was prior to the payment made him by Minter out of the proceeds of the loan from Raborn, or whether the rents and money obtained from the receiver had been deducted therefrom.

In Cox v. Fowler, 169 Okla. 355, 37 P. 2d 291, and in Akers v. Brooks, 103 Okla. 98, 229 P. 544, we held that where real estate was sold under an oral contract and a deed executed and placed in escrow to be delivered at a future date on payment of the purchase money, the equitable title passed at once to the vendee. In the instant case the legal title was already vested in Minter, and under his contract equitable title was also vested in him, subject to the payment of the purchase price, for which Adamson was given a lien until such time as it was definitely determined, at which time it was either to be paid or secured by a note and mortgage upon Minter's one-half interest. These provisions are inconsistent with any intention to hold said one-half belonging to Minter in trust for Adamson, and inescapably point to the ownership of that interest by Minter.

Nor is there anything in the agreement between Minter and Raborn from which it might be inferred that Minter undertook to hold any portion of his interest in trust for Raborn. The Raborn transaction was simply a loan made by Raborn to Minter, for which loan Minter gave Raborn a second lien upon his one-half interest in the land, and agreed that later when the transaction by which he was acquiring title was completed and the exact extent of his indebtedness to Adamson determined, he would secure Raborn by a

second mortgage on said one-half interest.

We conclude that there was no evidence to support the finding of the trial court that Minter, at the time of his death, was not the owner of an undivided one-half interest in the land in controversy.

It follows logically from what we have said above that under the rule announced in Chitty v. Gillett, supra, plaintiffs were entitled to enforce their claim against the said land subject to such liens, legal or equitable, as might be prior to their claim. The mere fact that such prior liens and encumbrances are shown by the evidence perhaps to equal or exceed the value of the property did not justify the trial court in denying plaintiffs a judgment as against the land, and the right to undertake to collect the judgment by a sale of the same subject to prior liens. No case so holding is cited by the parties, and we know of none.

While we have found no case exactly in point, we think that in justice and equity defendants should be subrogated to the lien of Adamson against the land for such amount as may be found by the trial court was due Adamson. We think also Sara E. Minter should have an equitable lien, prior in point of time to plaintiffs' claim, for the $923 which she paid to satisfy the expenses of her husband's last illness, his funeral expenses, and the costs and attorneys fees in the administration proceeding. The payments so made were not payments of debts due from her in any manner, but were made to preserve and protect the property for herself and her minor son.

In Mitchell v. Jackson, 177 Okla. 441, 60 P. 2d 390, we said:

"There appears to be no Oklahoma case directly in point on this question. The questions involved are purely equitable, hence we must apply equitable principles to arrive at the correct solution. In Richardson v. American Surety Co., 97 Okla. 264, 223 P. 389, 392, cited above, the court said: 'The principle to be derived from the doctrine of subrogation is that it is born of equity, and results from the natural justice of placing the burden where it ought to rest. It does not flow from any fixed rule of law, but rather from principles of justice, equity, and benevolence. It is a purely equitable result, depending, like other equitable doctrines, upon the facts and circumstances of each particular case to call it forth. . . .' "

We think the equitable principle enunciated in the above decision applicable to the instant case, and that the land should be sold to satisfy the claim of plaintiffs subject to an equitable lien of defendants for those amounts. The claim of Raborn, with interest at the rate of 5 per cent from February 14, 1942, is also a lien prior in point of time to the claim of plaintiffs. Plaintiffs urge that no claim was made against the estate of J. O. Minter by Adamson or Raborn, but we have heretofore held that it is not necessary to make such claim where the amount due is secured by a lien upon specific property. Stuart v. Westerheide, 14 Okla. 150, 289 P. 721. The $1,300 given to his daughter by Raborn to enable her to purchase the one-half interest of Adamson in the land is not a prior lien upon the interest of J. O. Minter, since there is no showing that such sum was necessary to enable the defendants to liquidate the balance due Adamson for J. O. Minter's one-half interest.

The cause is reversed and remanded, with directions to the trial court to hear additional evidence upon the amount of the balance due from Minter to Adamson on Minter's one-half interest in the land, taking into consideration the amounts received by Adamson from rents or moneys received by him, if any, from the receiver, and the amount of the Raborn loan so as definitely to determine the amounts paid by defendants to clear Minter's one-half interest in the land. Upon ascertaining such amount, the court should render judgment for the plaintiffs against the land, permit them to offer said one-half

interest for sale to satisfy their claim, together with a reasonable attorney's fee, but subject to the prior liens above specified.

Reversed, with directions.

HURST, C.J., and BAYLESS, GIBSON, and ARNOLD, JJ., concur. DAVISON, V.C.J., and RILEY, WELCH, and CORN, JJ., dissent.