MID AMERICA TRAILER SALES, INC.,
an Oklahoma Corporation, Appellant,

v.

Walter L. MOORMAN, Individually, Johnson, Moorman & Ferrari Insurance & Bonding, a partnership, and Lloyd's of London, a domesticated insurance corporation, Appellees.

No. 49050.

Court of Appeals of Oklahoma,
Division No. 2.

March 1, 1977.

Rehearings Denied March 28, 1977.

Certiorari Denied Oct. 4, 1977.

Released for Publication by Order of
Court of Appeals Oct. 7, 1977.

David A. Cheek, McKinney, Stringer & Webster, Oklahoma City, for appellant.

Larry D. Ottaway, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for appellee Moorman, et al.

Rucker, Tabor, McBride & Hopkins, Inc., Tulsa, for appellee Lloyd's of London.

BRIGHTMIRE, Presiding Judge.

Challenged is an order sustaining defendants' demurrer to plaintiff's amended petition without leave to amend and dismissing the action which rested on the trial court's conclusion that the petition failed to state a cause of action. The main issue argued by the appealing plaintiff here, however, is whether or not it is the real party in interest—that being, says plaintiff, the unrecorded basis for the dismissal.

### I

Plaintiff, a trailer sales company, sold and delivered a 1973 Utility Trailer[1] to one Michael Casey at the Port of Muskogee, Oklahoma. Casey gave Mid America a promissory note for the purchase price and a "security interest" in the trailer which the seller filed of record, and, on June 4, 1974, assigned to Fidelity Bank, N.A. with recourse. During the month Casey got behind $1,319.56 on the note—an amount he tendered to the bank on June 28. Before deciding whether to reject the payment or waive its right to declare the entire balance due and repossess the trailer, the bank demanded Casey show proof of collision insurance coverage the security agreement required him to carry on the trailer. Casey referred the bank to a Ft. Smith, Arkansas insurance agency—Johnson, Moorman & Ferrari Insurance & Bonding. The bank called the defending agency and received verbal assurance that collision insurance was in force on the trailer—an assurance which was followed up by a written confirmation dated July 3, 1974.[2] Relying on this assurance Fidelity accepted Casey's tender.

On July 15, 1974 subject trailer was involved in a collision near Sand Springs, Oklahoma, and sustained nearly $10,000 worth of damage. Both Fidelity and plaintiff notified defendants of the loss and demanded reimbursement. Defendants refused to pay off saying that neither the binder referred to in their July 3 letter nor a contract of insurance was ever written.

The trailer was later repossessed and Fidelity made demand on plaintiff to repurchase it. Plaintiff did so on December 5, 1974 and received from Fidelity the damaged trailer and an assignment of the security agreement. Plaintiff paid out $10,882.16 for towing and repair of the trailer—the amount it seeks here less $500 which is deductible under the policy.

Lloyd's of London, Moorman and the defending agency each filed a general demurrer specifying only that the amended petition "fails to state facts sufficient to constitute a cause of action in favor of the plaintiff and against" defendants. These were sustained on October 3, 1975 in a journal

---

1. According to Lloyd's of London brief the transaction involved the sale of several utility trailers one of which became the subject of this lawsuit.

2. The letter, addressed to Fidelity Bank of North America, covers seven trailers and reads:
"Re: C & C Leasing Company
"Gentlemen:
"This is to verify we have under Binder # DR70018 for the above insured, $500. deductible collision coverage on the following units:
1972 Utility # 5159006
1972 Utility # 5159005
1972 Utility # 5159004
1973 Utility # 6133 002
1973 Utility # 6133001
1973 Utility # 5670 002
1972 Utility # 4659010
"This coverage is to be written with the Lloyd's of London effective 7–1–74.
"We will send a Certificate of Insurance to you as soon as the policy is received.
"Sincerely,
"s/ Walter L. Moorman
Walter L. Moorman"

entry which recites no reason for the decision and adds that "plaintiff sought leave of Court to amend his petition by substituting another named plaintiff and said leave to amend was denied by the Court and plaintiff's action was dismissed . . . ." This appeal, of course, followed.

## II

In its brief plaintiff refers to a fact not shown in the record, namely, that "the demurrers were sustained for the reason that the plaintiff was not the real party in interest." Defendants ignore, or at least do not challenge the statement, and address the question of whether the petition states a cause of action emphasizing that "the propriety of the Trial Court's ruling must be determined in response to" this question because their "demurrers were addressed to this issue."

## III

 Technically defendants are correct though in this instance the difference may be one without a significant distinction so far as the ultimate result is concerned. While not listed as one of the statutory grounds for a demurrer[3] an objection that the action is not being prosecuted by the real party in interest may be raised by demurrer where such fact is disclosed on the face of the pleading. *Wiggins v. Sterne,* Okl., 293 P.2d 603 (1955). Such objection can be waived. *J. E. Crosbie, Inc. v. Fisher,* 188 Okl. 415, 109 P.2d 1075 (1941). The statute requires that a demurrer "specify distinctly the grounds of objection to the petition." 12 O.S.1971, § 268. And any "objection [as to disclosed matters] not raised when the defendant demurs or interposes a motion is deemed waived except objections to the jurisdiction of the court or that the petition does not state facts sufficient to constitute a cause of action." 12 O.S.1971 § 268A. Under the law, therefore, defendants have never objected to plaintiff as not being the real party in interest and, the objection having been waived, the trial court was not authorized to dismiss the action on that basis. *Finance Corp. v. Modern Materials Co.,* Okl., 312 P.2d 455 (1957).

## IV

We turn, then, to the crucial question of whether plaintiff has pleaded a recoverable claim.

Defendant Moorman and his agency undertake to sustain the dismissal with reasoning which, summarized, goes something like this. Plaintiff's allegations establish no cause of action ex contractu because: (1) it was a "complete stranger" to any insurance contract which may have existed between Casey and Lloyd's of London; (2) Fidelity had no insurable interest in the trailer because of its buy-back agreement with plaintiff; (3) Mid America did have an insurable interest in the trailer but it "did not attempt to exercise same prior to . . . ." the loss, nor was there any contact at all between plaintiff and defendants; (4) there is no allegation that plaintiff was a "loss payee" or a "named insured" under the policy; (5) plaintiff did not pay any premiums resulting in a failure of consideration; (6) only Lloyd's not its policy-writing agent would be liable; (7) and such liability would exist only in favor of Casey because plaintiff could not be a third party beneficiary of Lloyd's commitment to Casey.

Moreover, continue Moorman and the agency, no cause of action in tort is pleaded because: (1) there is no allegation of fraud; (2) the theory of negligent misrepresentation is not available to plaintiff because no duty existed between plaintiff and defendants which could have been breached.

Finally Moorman and the agency conclude it was all right for the trial court to deny plaintiff leave to amend by substituting Fidelity as party plaintiff because "Fidelity suffered no loss and has no possible future exposure" to any.

Lloyd's argument is in a similar vein except for the contention that if Mid America does have a right of subrogation that right is not enforceable "against Lloyd's." In

---

**3.** 12 O.S.1971 § 267.

short argues Lloyd's, it owed no duty to Mid America and therefore could not have breached any.

## V

We believe defendants' constructional analysis of plaintiff's amended petition is too narrow and overlooks some pleaded facts as well as some reasonable inferences deducible therefrom. In disposing of the issues raised we will consider first whether any facts are alleged upon which can be premised vicarious liability of Lloyd's as the principal of Moorman and his agency.

## VI

■ Plaintiff does not specifically allege that Moorman and his agency were acting as a policy-writing agent of Lloyd's in issuing the binder referred to in Moorman's July 3, 1974 letter to Fidelity. There is, though, an inference of such agency that can be drawn from the contents of the letter—contents we have to accept as true in testing the demurrability of the petition. In the letter, Moorman represents to Fidelity that the trailer in question is under binder # DR70018 and that the coverage is to be written with Lloyd's.

A binder as we understand it is a temporary insurance contract and is valid for 90 days or until a policy is issued whichever occurs first. 36 O.S.1971 § 3622. Since it is not likely the temporary carrier will be different from the permanent one, we can presume the binder was with Lloyd's and that Moorman issued it under a valid power of attorney as required by 36 O.S.1971 § 3002 and other related statutory provisions. It follows that—according the petition a liberal construction favoring the pleader [4]—there is allegational support for the inference that Moorman and his agency in executing the binder were acting for, and

therefore did bind, Lloyd's. Thus whatever legal rights plaintiff has in the premises it has against Lloyd's as well as the other defendants.[5]

## VII

So the core question is—do the facts alleged by Mid America disclose it acquired certain enforceable rights against defendants by reason of the July 3 letter under the circumstances? We think they do.

To begin with plaintiff was not, as defendants suggest, a "complete stranger" to any contract of collision insurance which may have or should have been in force protecting all interested parties against collision loss of the trailer in July 1974. It occupied a position analogous to an indemnitor with respect to any loss Fidelity might sustain on the Casey paper. And so, of course, if called upon to indemnify Fidelity, Mid America would in the nature of things expect to be subrogated to whatever rights the indemnitee had against third parties responsible for the loss. In this case Fidelity had a recouping cause of action not only against Casey and Mid America, but also against defendants. It elected to go against plaintiff and the latter having borne the loss falls heir to Fidelity's right of action against defendants.

■ Insurance companies have themselves, with a fervent plea for justice, invoked the doctrine of subrogation as a vehicle for shifting an indemnification loss to the tortious creator thereof. And indeed, it has been said that no other principle of equity stands in higher favor with the courts. For years courts have applied the doctrine in situations where it is deemed unjust not to. It is, as was mentioned many years ago in *Richardson v. American Surety Co.*, 97 Okl. 264, 223 P. 389 (1924), a

---

4. *Coston v. Kamp,* Okl.App., 549 P.2d 124 (1976).

5. While not material here because we are deciding only the question of whether any cause of action has been stated against defendants, we should mention that the liability of Lloyd's may differ from that of the other defendants if

predicated on breach of contract by Lloyd's as distinguished from its vicarious liability for tortfeasance. On the other hand, the facts ultimately could conceivably disclose that only Moorman and the agency are liable and that Lloyd's is liable neither contractually nor vicariously.

creature of equity intended to achieve what has been said to be the "natural justice of placing the burden where it ought to rest." Unlike a fixed rule of law, subrogation is pliable and capable of being molded to attain justice in an endless variety of circumstances which may have but one thing in common—the need "to compel the ultimate discharge of a debt or obligation by him, who in good conscience ought to pay it."

Hence in *Richardson,* a surety company—after paying off on a bank fidelity bond—was subrogated to the embezzler's claim against the grantee of some real property for a balance due on the purchase price. And in *Mitchell v. Jackson,* 177 Okl. 441, 60 P.2d 390 (1936) where Jackson, a grantee, made payments on a mortgage while laboring under the impression she owned the property, became subrogated to the rights of the mortgagee when later, in a court contest, she was found to have held the property as trustee only.

More recently in *Aetna Casualty & Surety Co., v. Associates Transports, Inc.,* Okl., 512 P.2d 137 (1973), the high court held that where an insurance company paid its insured's automobile collision damage it became, for the amount paid, subrogated to insured's right of action against the tortfeasor. In reaching this conclusion some significant subsidiary matters were settled, namely: (1) the statute forbidding assignment of a tort claim (12 O.S.1971 § 221) does not prohibit transfer of an actionable cause by subrogation; (2) if the subrogee pays the entire loss, or in case of a partial payment the subrogor has executed a release for the rest of the damage, the subrogee can bring the action in its own name as the real party in interest without running afoul of the rule against splitting causes of action; (3) an insurance policy covering destroyed property is a contract of indemnity and to the extent the indemnitor bears a loss it is subrogated by operation of law to the indemnitee's right of action for the loss against a third party; and (4) the real party in interest is the party legally entitled to the proceeds of a claim in litigation, citing *C & C Tile Co. v. Independent School D No. 7 of Tulsa,* Okl., 503 P.2d 554 (1972).

## VIII

■ These principles when applied to the pleaded facts here invite these conclusions: Fidelity sustained a loss of about $10,000 after a trailer on which it held a mortgage lien was wrecked when defendants declined to honor their previous written commitment to cover the trailer with collision insurance. When this occurred Fidelity turned to plaintiff for, in effect, indemnification—an obligation plaintiff had contractually undertaken in the form of an agreement to repurchase the financing papers upon default of Casey. When plaintiff accepted its responsibility and fully indemnified Fidelity it became subrogated to Fidelity's right of action against defendants either for breach of an insuring agreement, or for the negligent misrepresentation of the fact that a temporary insurance contract (binder) had been issued—an assurance made to Fidelity knowing that the bank held a security interest in the trailers.[6] Since Mid America bore the entire loss, the whole cause of action possessed by Fidelity passed to Mid America and as a consequence it became the real party in interest to the extent of its payout.

In our opinion the final conclusion is an appropriate application of the subrogation principle since it casts the loss upon those who in good conscience should bear it by reason of either having promised to bear it or having represented such a promise had been made. Indeed, to hold otherwise, it seems to us, would be unjust.

## IX

In view of the conclusion we have reached regarding the substance of plaintiff's amended petition, it is unnecessary to

---

**6.** It might develop, on the other hand, that for some reason the binder was cancelled. If so defendants still have a liability exposure for failing to give Fidelity reasonable forewarning so that it could protect its insurable interest—an interest shared by plaintiff by reason of its secondary liability.

consider the propriety of the trial judge's denying plaintiff a right to amend.[7]

The judgment of dismissal is reversed and the cause remanded for further proceedings.

BACON and NEPTUNE, JJ., concur.

---

7. However, should such a problem arise in the future we refer the parties to 12 O.S.1971 § 318 for guidance.